William Hunter et al. v. A. T. Morse's Heirs.

1. Pleading and Evidence in Trespass to try Title.—In trespass to try title, a plaintiff setting up a chain of title to the land sued for in his original petition, may, by amendment, describe a tract of different location, and by other chain of title; and such amendment relieves the plaintiff from the allegations in his original petition as to his title; and he may support his title to the land described by any competent testimony.

2. Description of Land in Deed.—The owner of an unsold balance in a league of land, (having sold off several tracts,) made a deed "for all and singular a certain piece or parcel of land containing 1,000 acres, situated and described as follows: In Harris county, and on Buffalo bayou, adjoining the city of Houston, being the undivided part of the league granted to Allen C. Reynolds:" *Held,* That by

such conveyance the unsold balance of the league passed, although in excess of 1,000 acres, as against a subsequent vendee of the maker of such deed.

3. PARTITION OF LANDS AS A CONVEYANCE.—A partition made by the owners of a tract of land among themselves, in writing, accompanied by a map showing the subdivisions of the land, and the parts allotted to each, signed and placed on record, evidences a transfer of any right held by those joining in the partition, in that part allotted to one of the parties: each holds in his part such title as he and those joining in the partition could give.

APPEAL from Harris. Tried below before the Hon. James Masterson.

Grace T. Morse, administratrix of the estate of A. T. Morse, deceased, brought an action of trespass to try title against William Hunter and others, for 357 acres of land, part of the A. C. Reynolds league.

The peculiarites in the petition as to description of land, and as to chain of title under which a recovery was sought, are carefully stated and discussed in the opinion.

The Reynolds league is situated on south side of Buffalo bayou, and fronting on its right bank. It had been transferred to R. M. Forbes, under whom all parties to the suit claimed.

It appears, that a tract of 500 acres was first sold by Forbes to Smith; then a tract of 928 acres to one Bailey, adjoining the Smith tract and east of it. Bailey's interest was subsequently purchased by J. M. Dozier. By some means, Forbes was induced to believe that there was a vacancy between the Bailey and Smith tracts, and subsequently sold to Parker (1) a tract of 327 acres, calling to begin on the bayou at northwest corner of the Bailey tract, and run up the bayou to the northeast corner of the Smith tract, &c.;—these two surveys adjoining, of course the deed calling for an imaginary vacancy described no lands;—and (2) a tract of 1,643 acres off the west side of the league. (The boundaries of this survey are a subject of discussion in the opinion.) The amount of these several sales makes 3,428 acres, thus leaving unsold, of 4,428 acres, (the full league,) 1,000 acres.

Subsequently, Forbes sold to R. G. Mills what is described in his deed as "all and singular a certain piece or parcel of land, containing 1,000 acres, and described as follows: In Harris county, and on Buffalo bayou, adjoining the city of Houston, being the undivided part of the league granted to Allen C. Reynolds."

Parker, in correspondence with one J. W. Lawrence, a land agent, authorized him to sell the 357-acre tract, in his correspondence pointing out its situation on the league as east of the Smith tract. Indeed, Forbes' mistake seems to have placed the Bailey tract in the east part of the league, making a vacancy between it and the Smith tract. Lawrence, authorized by the letters, made a conveyance of the 357 acres, but describing the tract as given above in description of the first tract conveyed by Forbes to Parker.

Mills sold his interest in the Reynolds league to J. B. Sydnor. Parker subsequently (November 30, 1863) made a deed to one Chandler for 357 acres of land in the Reynolds league, but the description describes no land. Chandler's heirs, in subsequent conveyances, describe a tract of 335 varas off the east side of the league; and under these conveyances, through Chandler, the defendants claim. The defendants had pleaded not guilty, and suggested improvements.

On measurement, it was ascertained that the Reynolds grant was in excess 535 acres, and contained 4,963 acres.

Subsequently, A. T. Morse, J. B. Sydnor, and J. M. Dozier, owning all the Reynolds grant, except the 500 acres held by Smith by metes and bounds, had a survey made of the tract and a map prepared, with the subdivisions and parts to be taken by each distinctly marked. In the settlement, Morse conveyed to Sydnor 100 acres off the south end of his larger tract on the west side of the league, and received in the partition a tract of 300 acres on the east side of the grant.

The plat, as given in the transcript, is as follows, (omitting subdivisions of the Sydnor tract into small lots,) together with the agreement of partition:

Statement of the case.

**N.**
BUFFALO BAYOU.

J. W. N. A. SMITH, 500 acres.

1,262 vs.

AGUS T. MORSE, 1,969 acres.

J. M. DOZIER, 985 acres.

A. T. MORSE, 300 acres.

6,505 vs.

J. B. SYDNOR, 1,109 acres.

7,225 vs.

1,748 vs.

J. B. SYDNOR, 100 acres.

799 vs.

335

**S.**

"We, the undersigned, owners and occupants of the above league of land, formerly granted to A. C. Reynolds, do here-

by agree to the subdivision of the said league of land as made by J. J. Gillespie, deputy surveyor of Harris county, and shown by the above plat.

A. T. Morse, in two tracts....................2,269 acres

J. B. Sydnor, in one tract....................1,209 "

J. M. Dozier, " " " ....................985 "

Given under our hands, at Houston, this 14th day of July, 1863.                    (Signed,)                         A. T. MORSE.

J. B. SYDNOR.

J. M. DOZIER.

Witness: Thomas McCarty, William Barnes."

This was proved up for record September 23, and was duly recorded 24th of September, 1874.

The additional testimony is sufficiently given in the opinion. The widow and children, as heirs of A. T. Morse, made themselves parties plaintiffs.

The court instructed the jury, that as both parties claim under R. M. Forbes, it is not necessary to trace title further than to him. * * * "As the call in the deed from Forbes to Parker for 357 acres only has one line, there was nothing in that power of sale to operate upon; therefore, unless plaintiffs have established a right to the land occupied by the defendants, under and by virtue of the partition had between Morse, Sydnor, and Dozier, they must fail.

"Forbes, by deed dated 21st of July, 1857, duly recorded in Harris county, where the land is situated, July 31, 1857, conveyed to Mills, under whom Sydnor deraigns title, the undivided interest and title then held by Forbes, and the entire interest of Forbes, whether it was more or less than 1,000 acres, passed to Mills, and from Mills to Sydnor; and if the testimony shows that Sydnor conveyed to Morse the land sued for in plaintiffs' amended petition, then find for plaintiffs as heirs at law, and widow of A. T. Morse, deceased, against the several defendants shown to be in possession," &c.

The jury found for plaintiffs, and judgment was rendered accordingly. The defendants appealed.

*W. P. & E. P. Hamblen* and *Crosby & Hill*, for appellants.—
We now proceed to discuss another branch of this cause, pre-
sented by the rulings of the court in the admission of proof,
and the charge thereon. The charge is as follows: "Unless
plaintiffs have established a right and title to land occupied
by defendants, under and by virtue of partition had between
Morse, Sydnor, and Dozier, they must fail. Forbes, by deed
dated 21st of July, 1857, duly recorded in Harris county,
where the land is situated, on 31st of July, 1857, in record
book T, page 228, conveyed to Mills, under whom Sydnor
derives title, the undivided interest and title then held by
Forbes, whether it was more or less than 1,000 acres, passed
to Mills, and from Mills to Sydnor; and if the proof shows
that Sydnor' conveyed to Morse the land sued for in plain-
tiffs' amended petition, described in exhibit B, then find for
plaintiffs as heirs at law, and widow of Morse, deceased,
against the several defendants shown to be in possession."

The defendants below confess their astonishment—we
might say surprise—at the attempt of the plaintiffs to insist
upon this branch of the case, and more so at the rulings of
the court in admitting the proof. They made objection to
all of it, and reserved their points. Defendants had insisted
that the plaintiffs must confine themselves to the title claim-
ed through Lawrence as attorney; that they having espec-
ially pleaded that title, should be confined to it in their proof,
and preserved the point in their bill of exceptions above re-
ferred to, and in a charge asked.

In plaintiffs' amended petition, filed November 6, 1874,
this allegation is made: "But said A. T. Morse also had
held and owned a perfect title to the tract of land described
in exhibit B to their amended petition, filed August 8, 1874,
the same in which they pray an order of survey, and that
said A. T. Morse had held and owned said perfect title to
said tract of 300 acres, more or less, by a regular chain of
transfers and deeds from Robert M. Forbes down to him,
(the links or papers, or copies thereof, which make said chain,

will be shown the court,) and that whatever right said A. T. Morse obtained under said deed, executed by said attorney in fact, Lawrence, supports and sustains the title of said Morse to said tract described in said exhibit B to said amended petition."

This is the only plea of plantiffs that could, by any possibility, admit proof other than the title through Lawrence as attorney. We submit, that the utmost liberality allowed only such proof of title as was not inconsistent with the pretended title acquired through Lawrence as attorney, and that plaintiff could not go into the broad field of proof, as in trespass to try title, under this allegation. Possibly, a title not inconsistent with, and which the Lawrence title would support, might have been introduced under this pleading, but certainly not a title inconsistent and foreign to the pretended one Lawrence conveyed. It is the privilege of a plaintiff to bring trespass to try title, and show whatever title, legal or equitable, he may have; but when he pleads his title specifically, he will be confined to it; and in this cause, unless he can connect the Lawrence title with such other title, his proof should have been excluded, and the court should have refused to charge upon it. The court determined otherwise, and if the court was correct, it devolves upon us to show that no title accrued to plaintiffs (appellees) by or through anything shown.

On this branch of the case, plaintiffs introduced a deed from R. M. Forbes to Robert Mills, dated the 21st of July, 1857, wherein was conveyed "all and singular a certain piece or parcel of land containing 1,000 acres, situated and described as follows: In Harris county, and on Buffalo bayou, adjoining the city of Houston, being the undivided part of the league granted to Allen C. Reynolds."

Plaintiff then read deed from Mills to Sydnor for same land, dated the 27th day of October, 1862.

Here the conveyances ceased, but plaintiffs were permitted to read and show to the jury the plat in the record, and the

agreements of Morse, Dozier, and Sydnor, as follows: "We, the undersigned, owners and occupants of the above league of land, formerly granted to A. C. Reynolds, do hereby agree to the subdivision of the said league of land as made by J. J. Gillespie, deputy surveyor of Harris county, and shown by the above plat.

A. T. Morse, in two tracts.......... ...................2,269 acres
J. B. Sydnor, in one tract............................1,209  "
J. M. Dozier, "   "   "  ............................. 985  "

    Given under our hands, at Houston, this 14th day of July, 1863.                 (Signed,)            A. T. MORSE.
                                                        J. B. SYDNOR.
                                                        J. M. DOZIER.

    Witness: Thomas McCarty, William Barnes."

Proved up 23d of September, 1874, and recorded 24th of the same month, two months before the trial.

    Is it possible for the above plat and division to be a deed, so as to convey title to land? We are compelled to ask this question of the court, as the judge who presided at the trial did not determine it, but left it to the jury. If the court determine it is, and the jury found only on this point, then a reversal cannot be expected. But we do not think, in all deference to the opinion of the jury on a question of title, that the Supreme Court can so regard it. It possesses not a single element of a deed; no granting clause; no tenendum; no habendum; nor any consideration expressed for which it was made. Now, what were the facts? Morse had land in the league; Dozier likewise had land in the league, as well as Sydnor; and it can as well be said that Dozier conveyed as that Sydnor did. Morse had two tracts. What two tracts? Why, the 1,643 acres which he acquired from Parker, through Lawrence as attorney, in the deed, and the 357 acres attempted to be conveyed by Lawrence as attorney of Parker.

    It was the object of the parties to make lines, and not to convey. Sydnor only held 1,000 acres got from Mills, and

in the partition he received 1,209 acres,—1,109, and 100 acres conveyed by Morse to him.

We again refer the court to the deed from Parker, by attorney Lawrence, to Morse. It conveys only 1,643 acres, and cannot be construed to include more. Yet we find, by referring to the plat, that Morse received 2,069 acres—1,969 acres received in partition, and 100 acres sold Sydnor, not including the 357 he attempted to obtain from Lawrence as attorney of Parker. Dozier got from Bailey only 928 acres, yet he received 985 acres in the partition. Certainly all reasonable excesses were thus consumed. We will tabulate:

| | | | | |
|---|---|---|---|---|
| Morse received of excess | | | | 427 acres |
| Dozier | " | " | " | 57 " |
| Sydnor | " | " | " | 109 " |
| Total | | | | 592 acres |

The court, therefore, should have ruled the partition out as a muniment of title, and it was error to leave it to the jury to say whether there was a conveyance or not from Sydnor to Morse. All the testimony on this branch of the case should have been excluded, because it was irrelevant, and did not affect the defendants. The court should have instructed the jury, that plaintiffs had not made out a perfect title, and they should have found accordingly.

The defendants were not called on to show any title, as they were in possession, and could not be disturbed, except by some one showing a perfect title; but not wishing to stand in the light of trespassers, they did show a title, and we think the better of the two, if we must apply that test. J. A. Parker conveyed to John Chandler November 30, 1863, and the heirs of John Chandler conveyed to the several defendants at different dates.

*Crank & Webb*, for appellees.

I. It was not necessary for plaintiffs to state the evidence of their title. (Hughes *v.* Lane, 6 Tex., 289; Croft *v.* Rains, 10 Tex., 520.)

II. It was necessary for the appellees to show the other sales made by Forbes out of the league, in order to support their title, and to explain fully the language of the deed from Forbes to Mills. That deed describes the land conveyed by it in the following language: " All and singular a certain piece or parcel of land, containing 1,000 acres, and described as follows: In Harris county, and on Buffalo bayou, adjoining the city of Houston, being the undivided part of the league granted to Allen C. Reynolds."

It is contended, by the appellants, that this deed only conveyed 1,000 acres; but we contend that it conveyed all that Forbes, at this date, owned in the league. Previous to this deed to Mills, Forbes had deeded out of the league 500 acres to Smith. This sale to Smith is recited in Forbes' deeds to Bailey and Parker. Forbes also deeded 928 acres to Bailey, and to Parker two tracts of 357 and 1,643 acres, making 2,000 acres; and it is true that the deed from Forbes to Mills mentions 1,000 acres; and for this a very natural reason can be given, which is, that Forbes estimated the league to contain only 4,428 acres, the technical number of acres in a league, and the sales he had made prove this idea, viz.:

| | |
|---|---|
| To Smith.................................. | 500 acres |
| To Bailey................................. | 928 " |
| To Parker, 357 and 1,643 acres, making...... | 2,000 " |
| To Mills, he names it as................... | 1,000 " |

| | |
|---|---|
| Making exactly............ | 4,428 acres |

While this makes plain why Forbes supposed that the league contained 4,428 acres, and that there were 1,000 acres unsold or ".undivided," yet he intended to convey, and did convey, all of the league he then owned.

In the fourth volume of Bacon's Abridgment, title GRANTS, subdivision I, p. 526, it is held: " Grants are to be construed according to the intention of the parties; and if there appears any doubt or repugnancy in words, such construction is to be made as is most strong against the grantor, because he is pre-

sumed to have received a valuable consideration for what he parts with." (Also, see the authorities cited to the text.)

And again, under the same subdivision, p. 528, it is held: "The great rule of construction, with respect to deeds and contracts, is to give that which will effectuate the intention of the parties, if such intention be consistent with the principles of law." (Also, see authorities cited to the text. We refer, also, to Berry v. Wright, 14 Tex., 273; Barret v. Barret, 4 Desau, (S. C.,) 447; Williams v. Claiborne, 7 Sm. & M., 488; Middleton v. Pritchard, 3 Scam., (Ill.,) 510; Cocheco Co. v. Whittier, 10 N. H., 305; Doe v. Porter, 3 Pike, (Ark.,) 18; Jackson v. Clark, 7 Johns., 217; Litchfield v. Cudworth, 15 Pick., 23; Frost v. Spaulding, 19 Id., 445; Bridge v. Wellington, 1 Mass., 219; 4 Id., 135; 6 Id., 24; 7 Id., 381; Dawes v. Prentice, 16 Pick., 435; Huntington v. Havens, 5 Johns. Ch., 23; Hayes v. Kershow, 1 Sandf. Ch., 258; Wheelock v. Moulton, 15 Vt., 519; Doe v. Greathed, 8 East, 91.)

There was no fraud, no concealment or suppression in this sale to Mills; and the face of the deed shows that it was the intention of both Forbes and Mills, that Mills should have the undivided or unsold part of the league. (Dalton v. Rust, 22 Tex., 134; Maxey v. O'Connor, 23 Tex., 234; Boar v. McCormick, 1 Serg. & R., 166; 6 Id., 487; 13 Id., 140; Galbraith v. Galbraith, 6 Watts, 117; Fleet v. Hawkins, 6 Munf., 188; Mann v. Pearson, 2 Johns., 37; Taylor v. Fleet, 4 Barb., 95; Campbell v. Clark, 6 Mo., 219.)

Moore, Associate Justice. — This suit, as originally brought, purports to be, as against appellants, an action of trespass to try title to 357 acres of land, a part of the league of land originally granted to Allen C. Reynolds. Appellees, (plaintiffs in the court below,) in their petition, claim to be entitled to said 357 acres of land, which they purport to describe by metes and bounds in exhibit A, attached to the original petition, by and through a regular chain of conveyance to their ancestor, A. T. Morse, from R. M. Forbes, who

is admitted to have formerly owned the entire Reynolds league, the chain of conveyance relied upon to establish their titles, as follows, to wit: (1) Deed from Forbes to J. A. Parker, dated March 16, 1855; (2) Letters from A. Parker to J. W. Lawrence, of March 12 and August 3, 1860, claimed to authorize Lawrence to sell and convey the land; (3) Deed from J. A. Parker and Louisa C. Parker, his wife, by J. W. Lawrence, to A. T. Morse, dated September 24, 1860.

If the judgment of the court rested on no other foundation than the averments of the original petition, it should be reversed. And if appellees relied solely upon the title of J. A. Parker, we would be forced to hold that the evidence was insufficient to warrant their recovery of the land adjudged them; for it is demonstrable, beyond all cavil, from the evidence set out in the statement of facts, that no land whatever is described in the original petition, or conveyed by said deed from Forbes to Parker, in so far as it relates to the land supposed to be sued for in the original petition; that the alleged boundaries of the supposed 357 acres of land, for which suit was first brought, set forth in the petition and given in said deed, merely describe or trace a straight line across the league.

But the judgment before us is not based upon the allegations of the original petition, and is for another and altogether different parcel of land from that originally sued for, and supposed to have been described in the exhibit to the original petition. To the tract recovered, appellees deraigned title from Forbes by an entirely different chain of title than that shown by the deeds previously mentioned, and with which they had no connection whatever; unless they tend, as appellees seem to think, to support the title upon which they really recovered.

In an amended petition, filed August 8, 1874, the plaintiffs, after reiterating the ownership of their ancestor, A. T. Morse, as previously pleaded, say the land sued for "may not be a part of the tract described in exhibit A to their original peti-

tion, but may be, and more likely is, a part of said tract in exhibit B, a part of this amendment." Exhibit B reads as follows: "A part of a league of land granted to A. C. Reynolds, situated in the county of Harris, and State of Texas, beginning on the south side of Buffalo bayou, at the northeast corner of said league; thence south along the east line of said league to its southeast corner; thence west 335 varas for a corner; thence north to the south bank of Buffalo bayou for a corner; thence down the meanderings of said Buffalo bayou to the place of beginning, containing 300 acres of land, more or less."

This exhibit correctly describes the land occupied and held by appellants, and for which appellees got judgment. But appellants contend that neither the pleading nor proof warrant the judgment. They insist, that as appellees claim to have acquired their title to the land for which they sue by a deed from Parker and wife (by Lawrence, their attorney) to A. T. Morse, they were not entitled to recover on a title not supported by this deed. They also insist, that no other evidence of title was admissible under the allegations of their petition. If the original petition had not been further amended, this objection would certainly have been entitled to grave consideration; but on November 6, 1874, plaintiffs, by leave of the court, again amended their petition, and, together with other things not necessary to mention, say: "But said A. T. Morse also had held and owned a perfect title to the tract of land described in exhibit B to their amended petition, filed August 8, 1874, the same in which they pray for an order of survey; and that said A. T. Morse had held and owned said perfect title to said tract of 300 acres, more or less, by a regular chain of transfers and deeds from Robert M. Forbes down to him, (the links or papers, or copies thereof, which make said chain, will be shown to the court,) and that whatever right said A. T. Morse obtained under said deed, executed by said attorney in fact, (Lawrence,) supports and sustains the title of said Morse to said tract described in said exhibit B to said amended petition."

It plainly appears, that appellees, by this amendment, claim the land for which they got judgment by a different chain of title from that alleged in their original petition. Certainly, if they proved this averment they were entitled to judgment, whether the deed by Lawrence, as attorney for Parker, supported and sustained the title thus proved, or not. If appellees had a perfect title, it needed no support. A party may claim land under as many different titles or chains of title as he can, or deems it to his interest to acquire; but certainly a perfect title should not be excluded from the jury, because he may have mistakenly alleged in the petition that he has another title which supports and sustains the perfect title.

Let us, then, see whether appellees were entitled to the land adjudged them under this other title, set up in their amended petition. It was admitted, as we have said, that title to the entire league was at one time in R. M. Forbes; and all parties now claim and attempt to deraign title from and under him.

The first tract sold by Forbes, is that known as the Smith tract of five hundred acres. The next, is the Bailey or Dozier tract, purchased November 17, 1849, by Bailey, and subsequently sold by him to Dozier. This tract is described in the deed as " beginning at the northeast corner of a survey made for J. W. N. A. Smith, on the south bank of Buffalo bayou; thence south, along the east line of said survey, to the back or southern boundary line of the league; thence east, along said southern boundary line, to such point on said line that a line running due north, and parallel with the east line of the survey made for said J. W. N. A. Smith, and extended to the bank of Buffalo bayou, and thence with the meanderings of said bayou to the place of beginning, shall contain an area of nine hundred and twenty-eight acres."

Notwithstanding it was admitted that the title for the entire league was in Forbes, as the deed to Bailey was made by one Spilman, it seems probable that only the remainder of the

league left after the sale to Smith and Spilman may have belonged to Forbes. This, however, is of no special moment. On March 16, 1855, Forbes made a deed to Parker, purporting to convey two tracts; the first, of three hundred and fifty-seven acres, described as follows: "Beginning at a point on the bayou, which is the northwest corner of a tract of nine hundred and twenty-eight acres sold by me to J. S. Bailey, of the State of Virginia; thence westwardly, with the meanderings of the bayou, to the northeast corner of five hundred acres sold to J. W. N. A. Smith by James Spilman; thence south, with the east line of said tract, six thousand eight hundred and eighty-one varas, to the south line of the league; thence east with said south line, to the southwest corner of said tract of nine hundred and twenty-eight acres, so as to contain three hundred and fifty-seven acres."

This is also the description given of the land sued for in the original petition; but, as is manifest from an inspection of the deeds to Smith and Bailey, no land is described by or included within these lines. The deed does not give the boundary of any land whatever; it merely describes a straight line across the league.

In addition to this supposed tract of three hundred and fifty-seven acres, Forbes, by this deed, conveyed to Parker a tract described as follows, to wit: "Beginning at the southwest corner of the league, thence north with the west line of the league, to the northwest corner of the league; thence down the meanderings of the bayou, to the northwest corner of said survey of five hundred acres; thence with the west line of said survey, to its southwest corner; thence due east with the south line of the survey of five hundred acres, to such point that a line due south and parallel with the west line of the league, extended to the south line of the same, shall contain an area of sixteen hundred and forty-three acres."

February 20, 1860, this tract was sold and conveyed by similar metes and bounds, by Parker to A. T. Morse. But,

on a survey, it was found that it is not necessary to run from the southwest corner of the 500-acre tract east any distance whatever, to include the quantity of land called for in the deed, but even where the line is continued on the same course as the west line of the Smith tract to the south boundary of the league, the tract contains 2,069, instead of 1,453, acres, as called for in the deed. Being a sale, however, by metes and bounds, all the land included within the calls, when run in accordance with the evident intention of the parties, vests in the grantee. Whether the grantor may have the deed cancelled, because the amount of land included in the boundaries is grossly in excess of that supposed and intended to be conveyed, or whether he is merely entitled to a corresponding increase in the stipulated price, (O'Connell v. Duke, 29 Tex., 299,) we are not called upon to determine.

On the 21st of July, 1857, Forbes, in consideration of $5,000, sold and conveyed to Robert Mills "all and singular a certain piece or parcel of land, containing 1,000 acres, situated and described as follows: In Harris county, and on Buffalo bayou, adjoining the city of Houston, being the undivided part of the league granted to Allen C. Reynolds."

As it is upon this deed appellees rely to establish their title to the land for which they got judgment, it is necessary to determine what land, if any, passed by it to Mills. An inspection of the previous conveyances, in connection with a survey of the league and the several tracts previously sold, shows that if the league contained its correct quantum of land, and the deed from Forbes to Parker had operated to convey two tracts of the number of acres and in the locality indicated, that there would have been just a thousand acres in the league still unsold when the deed to Mills was made, which might have been embraced either in one or two parcels—one immediately south of the Smith tract, and the other on the east side of the league, covering the land described in the judgment. But, giving its legal effect to the deed from Forbes to Parker, there would have remained only 931 acres

unsold, the locality of which might have been the same as just stated.

The league, however, in fact, contained 4,963 acres. If we deduct the quantity actually conveyed by the previous deeds, there remained unsold at the date of the deed to Mills 1,466 acres; and if we deduct 3,428 acres, the quantity supposed by Forbes to have been previously sold, there remained 1,535 acres. In either case, the unsold portion of the league necessarily must have included the 300 acres recovered by appellees. Now, certainly, there is a very great difference between the quantity of land actually unsold and that which we must infer the parties to the deed supposed. But, as has previously, in effect, been said, if Forbes is satisfied, it does not lie in the mouths of strangers to complain. And although the deed is very carelessly and informally drawn, we think it must be construed to vest in the vendee all of the league remaining unsold at the date of the deed. Unless it is held to convey all of the unsold parts of the league, it can have no effect whatever; for there is nothing to give it application to one part or portion of the unsold or undivided part, as it is expressed in the deed, rather than another. The language of the deed plainly indicates that it was the intention of Forbes to convey to Mills all of the league which he supposed he then owned.

The only remaining question is,—Did appellees show title to the 300 acres claimed in their amended petition, which, as we have seen, vested in Mills? This evidently depends upon the effect to be given to the adjustment of their conflicting, or supposed conflicting, interests, and the agreement to partition all the land outside of the Smith tract, entered into July 21, 1866, between Sydnor, the vendee of Mills; Dozier, the owner of the Bailey tract; and A. T. Morse, who unquestionably owned all the land which had been legally conveyed by Forbes to Parker. At the date of this agreement, the title to this particular part of the league was unquestionably in Sydnor, to whom it had been conveyed by Mills.

Neither Parker, nor any one claiming under him, had, or then claimed to have, any interest or title to it, by reason of conveyance from Forbes of the imaginary or supposed tract of 357 acres. Certainly, Sydnor's right to convey to whom he pleased cannot be denied or questioned. Did he convey it to Morse? Evidently he did not, by a regular deed of conveyance. But the agreement of partition, with the map attached and made a part of it, shows that such was his intention; and that it was the understanding and probable belief of all the parties that the agreement for partition was sufficient to effect this intention, cannot, we think, be doubted.

The testimony shows, that, outside of Morse's supposed equity as a purchaser from Parker of the 357 acres, for which Parker had no title, there was ample consideration to support the transfer to him of this 300-acre tract by Sydnor.

The agreement to partition, in connection with the map and the other evidence in the case bearing upon the question, is sufficient to estop Sydnor from denying that appellees are the equitable owners of the land, if the controversy was between them. If so, it is sufficient against appellants, who are mere occupants, without any valid legal or equitable title. Their only pretense of title is under the deed to Parker for the imaginary 357-acre tract, previously referred to.

No error being shown in the record of which appellants can complain, the judgment is affirmed.

AFFIRMED.