Wheeler, J.
The question to he determined is as to the validity of the title of the defendants acquired hy their purchase at the sale of the land for taxes.
To vest a title in the purchaser, the officer must have the power to sell, and the requirements of the law must have been complied with iu making the sale. Tiie power of tlie officer to sell land for the non-payment of taxes is, iu the language of the court in Williams v. Peyton, (4 Wheat. R., 77,) “a naked “power not coupled with an interest; and iu all such cases, the law requires “ that every prerequisite to the exercise of that power must precede its exer“cise; that the agent must pursue the power, or his act will not be sustained “by it.”
This principle was recognized in the case of Hadley v. Tankersly. (8 Tex. R.,) And it was held that, under the act of 1840, which did not make the deed prima facie evidence of the regularity of the sale, the party claiming under it must prove that all the prerequisites of the law had been complied with.
The act of 1848, (Hart. Dig'., art. 3145,) provides that the deed, when duly recorded, “ shall be prima facie evidence that all the requisitions of the law “have, been complied with in making such sale.” This statute does not dispense with a compliance with the requirements of the law by the officer, or relieve the purchaser from the effect of a non-compliance ; but only changes the burden of proof from the purchaser to the party impeaching his title. It is as necessary to the validity of the title now, as it was before this statute was enacted, that all the prerequisites of the law should have been complied with. The principle that the officer must exercise his authority strictly in conformity to law, or his act will be invalid, and will vest no title in the purchaser, is not affected by the statute. But it makes the deed frima facie evidence of the regularity of the sale, and throws upon the party impeaching the title the burden of proving that the requirements of the law were not complied with in making the sale.
A distinction has been taken in argument by counsel for the appellant between the power to sell and the regularity of the sale; and there manifestly is a clear distinction. The proceedings in making the sale may be regular, and the sale be ineffectual to pass the title for the want of power in the officer to make it. This distinction has been recognized by the Supreme Court of New York iu the cases cited by counsel ; and it is there held that the statute of that Slate, which makes the deed conclusive evidence of the regularity of the sale, and declares that it shall vest iu the vendee an absolute estate iu fee simple, applies only to cases iu which the officer has power to sell; that though the deed is conclusive evidence of the regularity of the sale, it is not so of the power to sell, and that the statute applies only to the proceedings to be had after the right and power to sell are acquired. (2 Comstock, 66; 18 Johns. R., 441.) To empower the assessor to sell, there must have been a legal assessment of the taxes, and a failure to pay them; and there are other provisions of the law which must have been complied with, before the right and power to sell will have been acquired. (Hart. Dig., art. 3133, 3136, 3137, 3138, 3150.)
It is not necessary here to determine whether the assessor’s deed is prima facie evidence, tinder the act of 1S4S before cited, of the existence of the facts on which his power to sell depends; for if it be so, it may be impeached and invalidated by showing the non-existence of those facts, or that the requirements of the law were not complied with ; and the decision of this case turns upon the inquiry whether the evidence establishes such non-compliance with the requirements of the law. That it does, will, we think, be apparent by-a. comparison of the provisions of the law with the acts done by the officer in one- or two essential particulars.
*210 The statute provides that all property shall be assessed “ in the name oí the .“owner, if known; and if not, then it shall be assessed by a description of the “property; if lands, it shall be described by the number of the tract, quantity “of acres, and to whom patented, or for whom surveyed for patent.” (Hart. Dig., art. 3137.)
Tiie statute Unis plainly requires that the land shall be assessed in the name of the owner if known ; but if lie be unknown it must be assessed by a description of the land; it provides what that description shall contain, and one of its essential constitutents is tiie name of the grantee. The assessment in this case was made in the name of the supposed owner, M. Yenda. This, however, was a mistake. Manuel Yenda was neither the owner nor the grantee. He had died several years before the grant was made. Caciana Sambrano was the grantee, and the owners were her heirs, the present plaintiffs. It is manifest, therefore, that the land was not assessed, either in the name of tiie owner or by such a description as tiie statute requires, that is, one embracing among other particulars mentioned, the name of the grantee. That it should have been in tiie one mode or the other clearly was necessary to the validity of the assessment. It may be said that it was tiie fault of the plaintiffs that their title was not recorded in the county, and it is true that it should have been so recorded. But if this afforded an excuse for not knowing who the owners were, it afforded none for not giving a correct description of the land by tiie name of the grantee. This coulil have been easily ascertained by reference to the abstract of original titles. The owners are not accountable for mistakes made in the county map, in causing which they had no agency.
In the case of Tollman v. While, (2 Comstock R., 66,) a case in point, the court-of appeals of New York held I his language : “An accurate designation “ or description of the land assessed is essential to the validity of the assess“ment. The assessment of non-residents’ lands is made with the ultimate
11
view of collecting- the tax by advertisement and sale of the land if it “should not be voluntarily paid. The comptroller’s sale is a rigorous proeeed-“ing. It divests (lie owner of his title without his consent, and often for a “ very trivial consideration; anil the Legislature lias, therefore, shown a cau“tions solicitude that it should not be done without his knowledge.”
Tiie assessment must contain a true description of the land in order that the purchaser may be enabled to know what laud he is purchasing, and that the. ■owner may know from (lie advertisements required lo precede the sale, that his land is exposed to sale and that lie may save it by paying the tax. If the 'land he misdescribed in the assessment, it will, of course, be misdescribed in tiie comptroller’s and county clerk’s offices, and in the notices and advertisc-■ments. The, mistake and falsity of description in the assessment necessarily runs through and invalidates all (he subsequent proceedings. In the, case cited it ivas said : “An assessment of non-resident land is fatally defective and •“void if it contain such a falsity in the designation or description o£ the parcel “assessed, as might probably mislead the owner and prevent him from ascer- “ taining by the notices that his limd was to bo sold or redeemed. Such a “mistake or falsity defeats one of the obvious and just purposes of the statute “ — that of giving to the owner an opportunity of preventing the sale by paying “the tax.”'" It is obvious that the misdescription of the land in this case was calculated to mislead. It is not to ho supposed that an advertisement of tiie land of M. Yenda would apprise those claiming title under a grant to Caciana Sambrano that theirs was the land intended. "To hold their title divested by a sale under such circumstances would be to defeat the manifest intention of the Legislature in the various provisions made to protect the rights of the owners of land liable to be sold for the non-payment of taxes.
The statute further requires of the assessor to make out “three descriptive “lists of all taxable property in his county on which tiie taxes remain “unpaid belonging to non-residents, who shall he named if Known; if nn-“known, shall‘he'so described; one of which lists shall be filed in the office “ of the clerk of the County Court of his county, another shall be posted up *211 “at the court-house door of said comity, and the other shall be transmitted to “tlie comptroller of public accounts.” (Id., art. 3150.) The assessor testifies that he made out three copies of his tax list; one of which he forwarded to the proper office at Austin, one he deposited in the county clerk’s office, retaining tlie other himself. It appears, therefore, that instead of posting up one copy at the court-house door, as tlie law required, he retained it in his possession. This was a material departure from the requirement of the law, one object of which was to apprise the owner that his land was to be subjected to sale for the taxes, and to afford him an opportunity of preventing- the sale by prompt payment.
Note 68. — Sam© case, 11 T., 562.
Note 69. — Robson v. Osborn, 13 T., 298; Devine v, McCulloch, 15 T., 488; Wofford-u-McKinDa, 23 T., 36; Kelly v. Medlin, 26 T., 48; Davis v. Fames, 26 T., 296.
But if the title were not obnoxious to these objections, there is another which must be held fatal to the right of the defendant, under,his deed from the assessor. Tlie deed professes to convey only tlie “right, title, and interest “of 11. Yenda, or of any other owner or claimant of tlie same, unknown, “ under him.” If the deed had assumed to convey the title of the unknown owner without reference to its derivation or the person under whom he claimed, and tlie proceeding liad been otherwise regular, it might have been effectual. But when the officer has thus undertaken to convey a particular title, the purchaser takes the title so conveyed; none other will pass by the deed. That manifestly conveys only the title of M. Yenda and those claiming under him. But tlie plaintiffs do not claim under Manuel Yenda, and consequently tlie deed does not profess to convey to the purchaser their right. We conclude that tlie assessor’s deed was inoperative to divest tlie plaintiffs of their title, not only because of tlie invalidity of the assessment, hut because the deed did not convey tlie title of the plaintiffs, and consequently that tlie court erred in refusing- to exclude it from the jury. The court also erred in refusing instructions asked by the plaintiffs, and in overruling the motion for a new trial.
Tlie judgment must, therefore, he reversed and the cause remanded.
Beversed and remanded.