## LONERGAN *v.* BABER.

### Opinion delivered March 31, 1894.

1. *Tax-sale—Double assessment.*
   Where a lot was assessed for the taxes of a certain year in the name of the owner under a certain description, and for the same year was assessed in the name of another under another description, and it appears by extrinsic evidence that the two descriptions identify the same lot, a forfeiture of the lot under the second description is void if the owner has paid the taxes on the lot under the first description.

2. *Estoppel—Judgment* in rem.
   A decree of confirmation of a tax-title, while conclusive *in rem* as to the validity of the title, will not estop one not a party to the proceeding, who sold the land with a covenant against

incumbrances, from showing that his covenant has not been broken, for the reason that the taxes upon which the forfeiture in question was based have in fact been duly paid.

Appeal from White Circuit Court.

GREEN GRANT, JR., Judge.

*J. W. House* for appellant.

1. The deed to Martin is absolutely void. It vested no title, and was not an incumbrance or lien on the property. The taxes had been paid, and the forfeiture was illegal and void. When taxes are paid under one assessment, but returned delinquent and sold under another assessment, the sale is void, and the purchaser acquires no title. Mansf. Digest, sec. 5872; 32 Ark. 391; 53 *id.* 116; 56 Vt. 384. A void tax deed is not an incumbrance. *Ib.* If the taxes for which the land was sold was not a lien on the land at the date of the conveyance by Lonergan, and the deed to Martin was void, then Lonergan is not responsible on his warranty. 63 N. Y. 399; 109 N. Y. 583; 47 Hun, 227; 30 Kas. 617; 29 Pa. St. 106; 50 N. W. 744; 2 Devlin on Deeds, sec. 931; 41 Vt. 296.

2. In order to recover, appellee must allege and prove that there was an outstanding paramount title at the time Lonergan conveyed to Lorentz, and that it was upon this title she was *evicted*. It is not contended that the eviction was had upon the deed from the State to Martin alone. It was based upon the decree in the case of R. W. Martin, *ex parte.* This decree was obtained without the knowledge of Lonergan, and when the appellee was in possession of the premises. 8 Cow. (N. Y.), 36; 1 Mass. 464; 2 *id.* 433; 26 Vt. 707; 2 Hill (N. Y.), 110; 7 Wend. 279; 82 Mich. 214; 4 Whart. (Pa.), 87; 36 Md. 148; 2 Johns. (N. Y.), 401. If the title to Martin was made valid by the *ex parte* proceeding, it was subsequent to the conveyance from Lonergan to Lorentz, and does not create a liability on the covenant of war-

ranty. 3 Bibb (Ky.), 173; 22 Hun (N. Y.), 424; 1 Strob. (S. C.), 66; 13 Vt. 384; 30 *id.* 692; 57 Me. 324; 9 Cush. 497; 15 S. E. Rep. 10. If the title to the lot was vested in Martin by reason of the *ex parte* decree, the appellee lost the title by her own laches, and she cannot recover on the breach of warranty. 8 Ill. 183; 17 *id.* 185; 57 Me. 330; 13 Ired. 84; 7 Jones (N. C.), 616; 5 *id.* 437; 17 N. H. 536; 11 Tex. 24; 28 Cal. 175; 41 Vt. 296.

3. The fact that Lonergan had notice of the ejectment suit does not preclude him from denying the Martin title. He was not bound to take notice of proceedings affecting the title after he had parted with it. 29 Ark. 591. The decree of confirmation could not operate to impose a personal liability by way of estoppel on Lonergan in the absence of notice. 97 N. Y. 139, 140; 80 Ill. 111, 346; 56 Ark. 55; Rawle on Cov. sec. 121, 124; 1 Strobh. 448. Without notice of the *ex parte* suit, he could not be held liable. 15 Ill. 15; 8 Mo. 128; 24 Wis. 417. If Martin did not have a *paramount* title at the time Lonergan conveyed to Lorentz, Lonergan would not be responsible. The status of the title at the time of the conveyance fixes the liability of Lonergan on his covenant. The *ex parte* decree did not bind Lonergan. It only settled the title between Martin and Mrs. Baber. It only concluded parties interested in the land. Lonergan had parted with his title long before, and it was Mrs. Baber's duty to defend the suit, and, having failed to do so, it was her own neglect and laches. See Freem. on Judg. sec. 617; Mansf. Dig. sec. 576, 577; 24 Ark. 519.

*John B. Jones* for appellee.

1. Neither the amount of the taxes were paid, nor was the payment upon a proper description of the land.

2. Appellant had notice of the suit by Martin, and he is bound by the judgment. He has his day in court. 19 Ark. 467; 15 Ill. 19; 20 *id.* 361; 52 *id.* 322; 51 Ill. 373; 5 Wend. 44; 2 Black, 429; 1 Strob. (S. C.), 66; 13 Vt. 384; 2 Devlin on Deeds, 925–7; 45 N. Y. 603.

3. The notice in the *ex parte* decree was notice to the world, and Lonergan is bound by it. 21 Ark. 367. The confirmation proceeding was *in rem.* 42 Ark. 330. A purchaser is not bound to redeem from a lien, and, if it grows into a title, the purchaser may recover on the warranty. Martindale on Conveyancing, 150. Notice of an incumbrance by the purchaser makes no difference. He is not required to search the records. 2 Devlin on Deeds, 913. Taxes are *liens*, and a breach of the covenant. *Ib.* 907.

4. The confirmation relates back to the date of the sale, and bars all persons save minors, etc. 24 Ark. 521.

5. The covenant was of general warranty, runs with the land, and is assignable. 1 Ark. 320; 1 Smith, Lead. Cases, 210; 4 Kent, Com. 555–6; Martindale on Conv. 135–6–7–8. The last grantee may bring suit. 51 Ill. 373; 27 Ill. 478; Martindale, Conv. pp. 56-57.

5. If the ejectment is partial, recovery may be had in proportion. 25 Ill. 262; Sedg. Meas. Dam. 182. A judgment in ejectment is an eviction. 52 Ark. 322; 41 Ill. 422; 2 Devlin on Deeds, 924; Martindale, Conv. 138.

*Sanders & Cockrill* for appellee.

1. The tax sale to Martin was valid. The assessment and payment of taxes by Lonergan was not a payment on any land. The description was insufficient. Blackwell on Tax Titles, sec. 224; 32 Penn. St. 54; 65 863; 50 Ark. 484.

2. The confirmation cured all irregularities and defects, and made the title good against the former own-

ers and parties interested.   53 Ark. 400 ; 55 *id.* 470 ; 42 *id.* 344 ; 24 *id.* 519 ; 22 *id.* 118.

3.   The decree in the confirmation proceedings concludes Lonergan.   He had notice.   11 Allen, 374 ; 13 Johns. 225 ; 19 Ark. 447 ; 11 Pick. 144 ; 12 *id.* 87.

*John M. Moore* argued orally for appellant.

HUGHES, J.   On June 11, 1891, the appellee filed her complaint, and on July 25 she filed an amended complaint in which she alleged that, on the 9th day of April, 1888, the defendant Lonergan sold the following described real estate to Edwin Lorentz, to-wit : Lot 6, less 100 feet front on Cumberland street on north side of said lot 6, and running east to lot 4, said 100 feet having been sold to Thomas McIntosh, also W ½ of lot 5, all in F. P. Law's addition to the town of Beebe, and situated on Main street, and in the SE ¼ NE ¼ SW ¼, Sec. 8, T. 5 N., R. 8 W. in White county, for the consideration of $2000 ; and that the said Lonergan, by deed of that date, did warrant and agree with the said Lorentz, his heirs and assigns, that he would forever warrant and defend the title to said land against all lawful claims whatever, and that said lands were free from all liens and incumbrances ; that said Lorentz, afterwards, on the 18th day of October, 1888, by deed of that date, conveyed said lands to the plaintiff for the sum of —— dollars ; that she and the said Lorentz have kept and performed their said covenants, but the said Lonergan did not, nor would, keep his covenants with the plaintiff, she being the assignee of the said Lorentz ; that said Lonergan had not warranted and defended the premises to the plaintiff, but, on the contrary, at the time of the execution of said deed and covenant to said Lorentz, said lot 6 had been forfeited and sold to the State of Arkansas at tax sale, and afterwards purchased from the State by R. W. Martin ; that defendant had full knowledge of the

execution of the title and claim of said Martin at the time he executed said deed and covenant; that said Martin lawfully claimed said lot by paramount title, and afterwards, in an action brought by him in the circuit court, which cause for equitable reasons was transferred to the chancery court, and on the 8th day of June a decree was rendered against her adjudging the title of the said Martin to be paramount, and that Martin was entitled to the possession of said property, and ordered that possession thereof be delivered to him; that Lonergan had due notice from plaintiff of the pendency of said suit to evict her from said premises, but did not defend the same, and that afterwards she was evicted from said premises by the said Martin; that she had no notice, and had never heard, of the claim of said Martin until the bringing of the said suit.

To this Lonergan filed a demurrer and answer as follows: The answer denies that Lonergan and Lorentz had not performed and kept their covenants, and that Lonergan had not kept and performed his covenants with the plaintiff, and avers that he had kept every covenant and warranty set forth in his said deed to said Lorentz; denies the forfeiture to the State, and purchase by Martin, of lot 6 of F. P. Law's addition to the town of Beebe; and says that the forfeiture of the lot, under which Martin purchased of the State, for the taxes of 1884, was void; that he had paid the taxes on same for that year, and that, at the time Lorentz conveyed the same to the appellee, it was free from all incumbrances; denies that Lonergan had any legal notice of the pendency of the suit for confirmation of Martin's tax title, and says that, though appellant was in possession of the lot, she failed to notify the appellant of the pendency of said suit for confirmation, and that he was not requested to defend in said suit; the answer avers that he was not requested or notified to defend in the suit in ejectment brought by

Martin against the appellant, but admits that he had
knowledge of the pendency of some kind of a suit by
Martin against the appellee. The answer submits that
appellee, being in possession of the lot, had, or should
have had, knowledge of the suit by Martin for confirma-
tion of his tax title, and that she could have shown that
the taxes were paid by him on the lot for 1884, and that
this would have been a complete defense to Martin's suit
for confirmation, he having purchased the lot upon a
pretended forfeiture of the lot for the non-payment of
the taxes of 1884, but that she neglected to make such
defense; that the proceeding for confirmation was with-
out foundation, the taxes for 1884 having been paid;
that the pretended eviction of the appellee was based
upon this decree of confirmation; that it was upon a
title acquired, if any was acquired, after his conveyance
to Lorentz, and for which he is in no way responsible.
The answer concludes with a demurrer to the complaint.

The facts are that the lot was assessed for taxes for
the year 1884, in the name of Thomas Lonergan, as "lot
6 SE. NE. SW. Sec. 8, T. 5 N., R. 8 W., and for the
same year it was assessed, in the name of —— Stockton,
as "lot 6, F. P. Law's addition to the town of Beebe."
Upon the lot, as assessed to him, Lonergan paid the taxes
of 1884, including corporation tax of the town of Beebe,
as shown by his tax receipt in evidence. Upon the as-
sessment to Stockton for said year, the lot, as assessed to
him, was forfeited to the State for the non-payment of
taxes. Upon that assessment, R. W. Martin bought the
lot of the State upon this forfeiture; brought an *ex parte*
suit for confirmation of his title; obtained a decree of
confirmation; brought suit in ejectment for the lot
against Mrs. E. E. Baber and one McIntosh, which was
transferred to equity, where he obtained a decree and
writ of possession for the lot, to which Mrs. Baber sur-
rendered, and brought this action for breach of cove-

nants against Lonergan, and recovered in the sum of $1950, to reverse the judgment for which Lonergan has appealed to this court.

1. Payment as defense to a tax-title.

It is urged that the description of the lot, as assessed to Lonergan, and upon which he paid the taxes of 1884, was so indefinite and uncertain that from it the land could not be identified or located, and that, therefore, his payment of taxes upon that description was, in contemplation of law, no payment upon lot 6, F. P. Law's addition to the town of Beebe, which was the accurate description of the lot, and that therefore the forfeiture based on this description was valid. It is shown by the testimony of F. P. Laws that he owned the SE $\frac{1}{4}$ NE $\frac{1}{4}$ SW $\frac{1}{4}$ Sec. 8, T. 5 N., R. 8 W., and was familiar with the location of lot 6; that he had this land platted as an addition to the town of Beebe; that it is within the corporate limits of the town of Beebe; that lot 6 SE, NE, SW, Sec. 8, T. 5 N., R. 8 W., is the same as lot 6, F. P. Law's addition to the town of Beebe; that it can be identified or located as well by one description as the other. So also said, in substance, J. S. Smith, in his testimony, as to the identification by one description as well as by the other; and there was but one lot six in Law's addition to the town of Beebe; that it is the identical land described in the complaint in this cause. The tax receipt of Lonergan for the taxes for the year 1884 upon this lot shows that it is in ''Beebe.''

The extrinsic evidence, in connection with the description in this tax receipt, shows clearly that the two descriptions apply to lot 6, F. P. Law's addition to the town of Beebe, and that the description upon which Lonergan paid the taxes for 1884 was sufficient to enable the owner, or any one else, to identify the lot upon which he paid the taxes for 1884 as lot 6, F. P. Law's addition to the town of Beebe. It is true that an assessment which does not identify the land is said to be void, but

evidence *aliunde* is admissible to identify. *Marsh* v. *Nelson*, 101 Pa. St. 51. The test is this : "Is the description sufficient to identify the land, and give notice to the owner of its assessment, or is it so defective that it might probably mislead the owner ?" *Tallman* v. *White*, 2 N. Y. 66 ; *Yenda* v. *Wheeler*, 9 Tex. 408. An assessment is void when it entirely fails to lead to identification. *Glass* v. *Gilbert*, 58 Pa. St. 266 ; *Lyman* v. *Philadelphia*, 56 Id. 488. "If the land be so inaccurately described as to render its identity wholly uncertain, the proceedings are void. If the ambiguity is patent, no extrinsic evidence will aid it. But if the ambiguity is latent, parol evidence is admissible to render the matter certain, whether the faulty description be in the tax bill, the judgment, or the deed, or in all. If, however, with all the aid of extrinsic evidence, the identity of the land is uncertain, the proceedings are void. A description that will identify the land without difficulty is essential to the validity of the assess ment roll, and the notice and deed must follow, substantially, the assessment description ; otherwise, the owner is deprived of the notices required by law." 1 Blackwell on Tax Titles, sec. 249.

We hold that the description upon which Lonergan paid—aided by the evidence *aliunde*—was sufficient, and find that he paid taxes for 1884 upon lot 6, F. P. Law's addition to the town of Beebe, and that therefore the forfeiture of this lot for taxes was void, and that R. W. Martin obtained no title to it by virtue of his purchase alone from the State, based on this forfeiture.

But, by the decree confirming Martin's title under this purchase, all controversy as to his title is barred ; it is *res judicata*, and cannot be controverted now. It is settled by this decree that his title, founded upon his purchase under the forfeiture for taxes for 1884, cannot be disputed by either the appellant, or the appellee.

2. Judgment *in rem* not an estoppel.

But does this prevent Lonergan from showing that the lot was free from incumbrances when he sold, and that his covenant against incumbrances has not been broken? It is said that the decree of confirmation is a decree *in rem*, and binds the "whole world." It is true, in a general sense, that a decree strictly *in rem* does bind all the world. But Lonergan was not a party, actually or by legal intendment, to this confirmation proceeding. He had parted with title to the lot proceeded against in that proceeding, and had conveyed his whole interest to the appellee before this decree of confirmation, and claimed, at the institution and during the pendency of the confirmation proceedings, no interest in or title to the land.

Section 577 of Mansfield's Digest provides that "the purchasers, or the heirs and legal representatives of purchasers, at all sales which have been, or may hereafter be, made may, when such lands are not made redeemable by any of the laws of this State applicable to such sales, or, if redeemable, may, at any time after the expiration of the time allowed for such redemption, publish six weeks in succession, in some newspaper published in this State, a notice calling on all persons who can set up any right to lands so purchased, in consequence of any informality or any irregularity or illegality connected with such sale, to show cause, at the first circuit court which may be held for the county in which such lands are situated six months after the publication of said notice, why the sale so made should not be confirmed, which notice shall state the authority under which the sale took place, and also contain the same description of the lands purchased as that given in the conveyance to the buyer, and shall further declare the price at which the land was bought, and the nature of the title by which it was held."

Section 581 of Mansfield's Digest provides that "the judgment or decree of the court confirming said sale shall operate as a complete bar against any and all persons who may hereafter claim said land in consequence of informality or illegality in the proceedings ; and the title to said land shall be considered as confirmed and complete in the purchaser thereof, his heirs and assigns forever ; saving, however, to infants, persons of unsound minds, imprisoned beyond seas, or out of the jurisdiction of the United States, the right to appear and contest the title to said land within one year after their disabilities may be removed."

The notice required by sec. 577 is a notice calling upon all persons who can set up any right to the lands so purchased, etc. This was not, therefore, a notice which made it obligatory upon Lonergan to defend the proceeding for confirmation; and while the decree of confirmation operates "as a complete bar against any and all persons who 'might, after its rendition,' claim said lands in consequence of informality or illegality in the proceedings," except persons in whose favor there is a saving clause in the statute, as provided in said section 581, Mansfield's Digest, yet it does not operate to preclude Lonergan from controverting, in this suit for breach of covenants of warranty, the truth of the material facts upon which said decree of confirmation is based. It is not conclusive as to Lonergan in this suit. He has no interest in and makes no claim to the land. Our statute seems framed to cover such a case. In *Durant* v. *Abendroth*, 97 N. Y. 141, it is said, speaking of a judgment *in rem* : "But it is not universally settled that the judgment is conclusive as to the facts or allegations upon which it is founded. In some of the States of the Union, and especially in the State of New York, though there are decisions to the contrary in the courts of England and in the United States courts,

it has long been settled that foreign judgments *in rem* are conclusive only as to the property involved, and may be controverted as to all the grounds and incidental facts on which they profess to be founded." So we hold the law to be, under our statute for confirmation of tax titles, without entering upon a discussion of cases.

The judgment in ejectment is not conclusive here against Lonergan, for the reason that the decree of confirmation of Martin's tax title was conclusive as to the question whether Martin's title to the lot was paramount to the appellee's, the defendent in the ejectment suit, through whom only Lonergan could have defended in that suit.

It follows that the judgment in this case must be reversed, and it is so ordered. Judgment will be entered here for the appellant, with costs.