6-96-028-CV Long Trusts v. Dowd 


















In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00150-CV
______________________________



IN RE:

DOUGLAS A. DUNN



                                                                                                                                                             

Original Mandamus Proceeding





                                                                                                                                                             
                          


Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss



O P I N I O NDouglas A. Dunn has filed a petition for writ of mandamus. He asks this Court to order the
District Clerk of Bowie County to perform her ministerial duty and issue citation in his pro se
lawsuit filed in the 202d Judicial District Court, cause number 03C1532-202. The clerk has taken
no action to issue citation. She has advised Dunn by letter that the suit has been filed, that a copy
has been provided to the trial judge, and that the clerk's office will take no further action except by
order of the trial court.
            This Court has jurisdiction to issue a writ of mandamus against "a judge of a district or
county court in the court of appeals district." Tex. Gov't Code Ann. § 22.221(b) (Vernon Supp.
2004). The Legislature has not conferred authority on this Court to issue a writ of mandamus
generally, and we do not have the authority in the context of these allegations to issue a writ of
mandamus against a district clerk.
            The petition is denied.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          November 10, 2003
Date Decided:             November 12, 2003



AN> (Address/Zip
Code), or as described on attached exhibit, (the Property). 


* Italicized words indicate the terms filled in by the parties.



According to Garcia, he obtained the "shorthand" description of the property from an
HCAD tax report. On its face, the Mayor-Garcia property description is insufficient to identify
the property with reasonable certainty. First, the description provides no county or city for the
property. Even though the zip code 77025 is listed in the description, presumably providing
the data necessary to identify the city and county of the property, at trial, Mayor testified that
her property lies within 77047 not the 77025 zip code. Without resorting to parol, there is no
way to determine the city or county of the property. While we have found no case explicitly
holding that failure to list the county and city in the description is, by itself, fatal, several cases
have relied on such failure as strong evidence of an insufficient description. See, e.g., Pick
v. Bartel, 659 S.W.2d 636, 638 (Tex. 1983). (1)

Failure to list a county and state of the property is only one of a series of shortcomings
with the Mayor-Garcia property description. In addition to providing no county or state, the
description does not show the total acreage to be sold, nor does it provide the data necessary
to arrive at this determination. From parol, we know Mayor owned 5.082 total acres on Fruge
Road. But nowhere in the description is 5.082 acres specified. Although "4.9500 AC" is
stated in the description, it is not clear this refers to acreage. Even if we construe the "4.9500
AC" as a reference to acreage, it is inconsistent with Mayor's total acreage on Fruge Road. 
 In addition, despite Garcia's assertion, the Mayor-Garcia contract does not indicate that
Mayor intended to sell her "entire tract" on Fruge Road. 

On the issue of the quantity of land contracted for, Garcia directs us to Tex. Pac. Coal
& Oil Co. v. Masterson, 160 Tex. 548, 334 S.W.2d 436 (1960). Masterson held that minor
differences between contracted acreage and actual acreage in the deed are not fatal to the
description. We agree with Masterson so long as there is another means to determine the
amount of property to be sold. Masterson is illustrative on this point. In Masterson, the
property description contained the following language: "All the unsold portion containing 186.4
acres out of the 640 acres . . . ." Id. at 438. But the unsold portion contained more than 186.4
acres. The question facing the court was whether the term "186.4 acres" or "All the unsold
portion" controlled. Applying contractual rules of construction, the court gave effect to the
phrase "All the unsold portion," concluding that "[t]he call for acreage . . . is the least reliable
. . . in a deed." Id. at 439. 

But Masterson is distinguishable from the present case. As stated above, nothing in
the Mayor-Garcia contract, including the property description itself, indicated the parties
intended to sell "all" of Mayor's property on Fruge Road. Unlike the description in Masterson,
the Mayor-Garcia description provided no mechanism to determine the quantity of property to
be sold. Without resorting to inferences or parol evidence, we cannot know with reasonable
certainty the quantity of property contracted to be sold. 

In Texas, the use of parol evidence to aid the determination of a property description
is limited. The Texas Supreme Court in Pick, 659 S.W.2d at 637 (quoting Wilson, 188 S.W.2d
at 152), reiterated this limitation: 

The certainty of the contract may be aided by parol only with certain
limitations. The essential elements may never be supplied by parol. The
details which merely explain or clarify the essential terms appearing in the
instrument may ordinarily be shown by parol. But the parol must not
constitute the framework or skeleton of the agreement. That must be
contained in the writing. Thus, resort to extrinsic evidence, where proper at
all, is not for the purpose of supplying the location or description of the land,
but only for the purpose of identifying it with reasonable certainty from the
data in the memorandum.

Here, the quantity of property contracted to be sold is left to baseless inferences or to
be supplied by parol evidence.

Next, Garcia cites Garner v. Redeaux, 678 S.W.2d 124 (Tex. App.-Houston [14th Dist.]
1984, writ ref'd n.r.e), as the "single most similar case" to the instant case. In Garner, the
property description in question was written on the back of an earnest money check and was
missing both the county and state of the property. The court found that the description was
sufficient. In reaching its conclusion, the court inferred the county and state by liberally
construing the other terms of the agreement and resorting to parol evidence. See id. at 127-28. While recognizing the limitations of parol evidence, the court allowed its use based on a
conclusion that the property description on the back of the cashier's check was only a partially
integrated document not intended to be a complete embodiment of the parties' agreement. 
Id. at 128. We believe these facts, along with the property description in Garner, stand in stark
contrast to the instant case. It is instructive to review Garner's property description side by
side with the Mayor-Garcia property description. The Garner property description contained
the following terms:

9-6-78

From Mr. & Mrs. Garner

Lot tract land

tract 66-Block 3

Highland Home Addition


Id. at 125.


The Mayor-Garcia property description contained the following terms:

Fruge RD 77025 

TR 14A

Allison Richey 

4.9500AC

Gulf Coast Homes Sec P

(C-3 Red, Vacant) ABST 626 0 Pitts


Both descriptions are missing the county and state of the properties. This, however,
is where their similarities end. The Garner description refers to a platted subdivision
("Highland Home Addition"), the entirety of a specific tract ("tract 66"), and a block ("Block 3")
therein. Conversely, the Mayor-Garcia description, while referring to a subdivision (Allison
Richey), does not provide a tract, block, or lot number consistent with the property Mayor
owned. Although the term "TR 14A" may refer to a tract number, such is not entirely clear. 
Mayor's deed indicates she owned Lot 14. This raises the question: Assuming "TR 14A" does
refer to Lot 14, does the "A" mean that only a certain portion of the property was contracted
to be sold? Is there also a TR 14B? Any inference becomes even more tenuous when
reading the term in context with an HCAD tax report. In that context, "TR 14A" refers to a tax
tract used for tax appraisal purposes. 

While we can be reasonably certain from the description that Mayor and Garcia
intended to sell some property within the "Allison Richey" subdivision, we cannot conclude with
exact certainty what property, or how much property, within the Allison Richey subdivision
Mayor contracted to sell. Without speculation, tenuous inferences, or parol evidence, we
cannot know with reasonable certainty the parameters of the contracted-for property. 

Garcia also asks us to apply the "nucleus of description" theory. This theory, outlined
in Gates v. Asher, 154 Tex. 538, 280 S.W.2d 247, 248-49 (1955), provides that, if enough
information appears in the description so that a party familiar with the locality can identify the
property with reasonable certainty, then the property description will be sufficient. 

To support the proposition that the Mayor-Garcia property description contained a
"nucleus of description," Garcia points to Stewart Title's ease in locating the property with only
the information contained in the property description. (2)

The "nucleus of description" theory applied in Gates, however, is distinguishable from
the present case. In Gates, the court of appeals concluded the property description failed
because it contained a reference to a nonexisting survey-"Denver Resurvey No. 2." See id.
at 249. The Texas Supreme Court, however, read all the terms of the Gates property
description together and determined that "Denver Resurvey No. 2" actually referred to an
existing survey-"Denver Resurvey" and the No. 2 referred to a block number within the
"Denver Resurvey." The court merely construed existing terms within the description liberally
to provide meaning to all the terms of the description. See id. In our case, however, no terms
within the description provide a "nucleus of description" for either the quantity of acreage to
be sold or Mayor's intention to sell all of her property, or the county and city of the property. 
We conclude, therefore, that the Mayor-Garcia contract does not contain a sufficient "nucleus
of description."

In addition, Garcia contends the reference to "Fruge Road" in the description was
enough to describe the land with reasonable certainty because Mayor only owned one tract
of land on Fruge Road. In support of his contention, Garcia points to the Texas Supreme
Court's holding in Kmiec v. Reagan, 556 S.W.2d 567, 569 (Tex. 1977). In Kmiec, the court
held, "When the grantor is stated to be the owner of the property to be conveyed and it is
proved that the grantor owns only a single tract answering the description, the land is identified
with reasonable certainty." Id. 

But Kmiec is also distinguishable from the instant case. Kmiec involved an option
contract to buy three separate tracts of land-150 acres of tract #1 and two tracts of 168.25
acres each. The defect in the Kmiec-Reagan option was an uncertainty about the shape of
two of the tracts, not the quantity of the property. Reagan, the seller, only owned the three
tracts of land specified in the option. Id. In addition, the property description within the option
contract contained a specific reference to the acreage to be sold-one tract containing 150
acres and two tracts containing 168.25 acres each. Id. The court found that, because Reagan
only owned these tracts, the tracts were sufficiently described. In the Mayor-Garcia contract,
however, there was no quantity, or at minimum an inconsistent quantity of property described. 
Further, there was no indication that Mayor intended to sell all of her property on Fruge Road.
This was not enough to describe the property with reasonable certainty. 

In the Mayor-Garcia property description, the essential elements of location and
quantity of property to be sold are either left to inference or to be supplied by parol. Thus, in
looking at the property description, we conclude that the description itself it is insufficient as
a matter of law.

But this does not end our inquiry. The next step is to determine whether the contract
sufficiently references another writing supplying the missing terms. If it does, the referenced
writing must have been in existence at the time the parties signed the contract. See Jones,
614 S.W.2d at 99.

As noted above, Garcia testified he obtained the "shorthand" description of the property
from an HCAD report. But the description in the Mayor-Garcia contract provides no reference
to the HCAD report. Moreover, even if the contract specifically referenced the HCAD report,
the report itself fails to provide a sufficient description. (3) Therefore, under step two of our
inquiry, there is no referenced document providing the missing essential terms.

Even if Garcia and Mayor knew and understood what property was intended to be
conveyed, it would not be enough to validate a defective property description. Moreover, as
Garcia points out, Stewart Title by a search of abstract records and by using the information
in the Mayor-Garcia property description, was able to locate the property and make a plat. But
as the Supreme Court aptly stated in Morrow v. Shotwell, 477 S.W.2d 538, 540 (Tex. 1972),
"knowledge and intent of the parties will not give validity to the contract, neither will a plat
made from extrinsic evidence. The essential elements of a property description may never be
supplied by parol." Id. at 541. In the Mayor-Garcia contract, the essential elements of the
description are either left to inference or to be supplied by parol. Such a description is
palpably insufficient to support a suit either for specific performance or for damages. See
Wilson, 188 S.W.2d at 154. Mayor's first point of error is sustained.

Having found the Mayor-Garcia description invalid, we must now determine the proper
disposition of this case. Garcia requests that if we reverse, we remand for reformation rather
than reverse and render the judgment in favor of Mayor. However, Garcia raises reformation
for the first time in a motion for new trial filed with this Court. He never pled reformation at
trial, nor did he ask for reformation in his initial appeal. If an argument is not raised in the trial
court or briefed on appeal, the argument should not be created by the court of appeals. 
Garcia v. Robinson, 817 S.W.2d 59 (Tex. 1991); see also Guadalupe-Blanco River Auth. v.
Pitonyak, 84 S.W.3d 326, 337 (Tex. App.-Corpus Christi 2002, no pet.) (stating that, although
appellees sought specific type of relief based on particular allegations, such claim not raised
in trial court pleadings and therefore waived). Garcia, therefore, has waived this remedy. (4) 

Because Mayor's appeal is reversed and rendered on her first point of error, voiding
the Mayor-Garcia contract under the statute of frauds, we need not address the issues of fraud
and "unclean hands." The only outstanding issue on appeal, therefore, is whether Mayor is
entitled to attorney's fees. Consistent with the Mayor-Garcia contract and a jury's finding on
this issue, we conclude Mayor is entitled to attorney's fees. 

The Mayor-Garcia contract contained the following provision: 

ATTORNEY'S FEES: The prevailing party in any legal proceeding brought
under or with respect to the transaction described in this contract is entitled to
recover from the non-prevailing party all costs of such proceeding and
reasonable attorney's fees. 


 The jury found that a reasonable attorney's fee for Mayor is $12,000.00, and for appeal,
$5,000.00. Because we render judgment in favor of Mayor, she is entitled to $17,000.00 in
attorney's fees.

 For the reasons stated, the judgment granting specific performance and attorney's fees
in favor of Garcia and against Mayor is reversed and rendered, and judgment is hereby
granted in favor of Mayor against Garcia for attorney's fees in the total amount of $17,000.00.



 Donald R. Ross

 Justice



Date Submitted: February 21, 2003

Date Decided: April 16, 2003
1. 
[1]Other cases similarly holding include: Wilson v. Fisher, 144 Tex. 53, 188 S.W.2d 150, 152
(1945); Osborne v. Moore, 112 Tex. 361, 247 S.W. 498, 500 (1923); Coker v. Roberts, 71
Tex. 597, 9 S.W. 665, 667 (1888); Jones v. Carver, 59 Tex. 293, 294 (1883); Yenda v.
Wheeler, 9 Tex. 408 (1853); Wiseman v. Zorn, 309 S.W.2d 253, 260 (Tex. Civ. App.-
Houston 1958, no writ); Cf. Garner v. Redeaux, 678 S.W.2d 124, 127 (Tex. App.-Houston
[14th Dist.] 1984, writ ref'd n.r.e.).

2. 
[2]It is not clear from the record whether Stewart Title used other documents to locate the
property.

 
3. 
[3]The HCAD report contains no more information than the Mayor-Garcia property
description.
4. While we recognize that, in certain circumstances, in the interest of justice we can remand
for reformation sua sponte, we do not believe this course of action is appropriate here. 
See, e.g., Morrow v. Shotwell, 477 S.W.2d 538, 541-42 (Tex. 1972) (finding reformation
appropriate remedy in interest of justice). First, the evidence is not clear there was a
mutual mistake of the parties. Moreover, such an equitable remedy would require Garcia
to have "clean hands." At trial, Mayor made at least an allegation of fraud in the
inducement. Although the jury never addressed this issue and we do not reach this issue
on appeal, from the evidence in the record we cannot say with full confidence that Garcia
had "clean hands" and that "justice would require reformation."