UNKNOWN HEIRS OF F. H. HOLLOWAY ET AL V.
L. B. WHATLEY ET AL.

No. 7284. Decided July 26, 1939.
(131 S. W. 2d Series, 89.)

*Llewellyn & Dougherty,* of Liberty, for plaintiffs in error.

Where the mineral estate in land has been severed by a prior reservation of such mineral estate, or by the conveyance of the mineral estate separate and apart from the land, title of such mineral estate will not pass by a conveyance by the owner of said mineral estate of "all land owned" within a prescribed area, such segregated mineral estate not being "land" within the meaning of the law applicable to conveyances of real estate, apt and particular words being necessary to convey such mineral estate. Kincaid v. McGowan, 88 Ky. 91, 4 S. W. 802, 13 L. R. A. 289; New River Lbr. Co. v. Blue Ridge Lbr. Co., 146 Tenn. 181, 240 S. W. 763; 38 C. J. 146; 17 R. C. L. 1080.

*F. T. Baldwin,* of Houston, and *P. C. Matthews,* of Liberty, for defendants in error.

A previous reserved mineral estate in Texas, is "land," as applied to conveyance of real estate, and hence, a subsequent conveyance of same as "land," will pass title to such reserved mineral estate, and for the legal reason the general term "land," embraces and includes minerals as well as all other substances of the earth. Swayne v. Lone Acre Oil Co., 86 S. W. 740; Bibb v. Nolan 6 S. W. (2d) 156; Luse v. Penn, 220 S. W. 303.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

On August 28, 1907, F. H. Holloway owned, among other lands in Liberty County, three tracts in the Moses Donohoe League. On that date he conveyed these tracts to M. H. Reed, excepting from the conveyance by reservation in the deed an undivided one-half interest in the minerals.

About three years later (May 9, 1910) Holloway conveyed to Jacob C. Baldwin certain lands in Liberty County, description of which is set out in the conveyance, reading in full:

"Being all of my interest of whatsoever character and description in and to the Elizabeth Munson League of land, the intention being to convey the same land as was heretofore conveyed to me and as is now shown by deeds duly recorded in Liberty County, Texas, and reference to said deed is here now made for a better description and identification of the land intended to be conveyed.

"Second tract being 180 acres of land off the W. side of the B. B. B. & C. Ry. Co's. survey. It being the same land that was conveyed to me by the said Baldwin. In which tract I hereby convey all my rights, title and interest.

"Third tract being 30 acres a part of the Moses Donohoe League, being all that part of said league the title to which now stands in my name. *If there is any other land owned by me in Liberty County, Texas, or any land, the title to which stands in my name, it is hereby conveyed, the intention of this instrument being to convey all land owned by me in said County."* (Italics ours).

The tracts particularly described in the foregoing description are not the same tracts conveyed by the first deed. The mineral estate subsequently to be referred to is that which was severed from the three tracts described in the first deed by the reservation in that deed, and which would have passed to Reed but for such reservation. The lands conveyed by both deeds are all located in Liberty County.

L. B. Whatley and others filed suit against the unknown heirs of F. H. Holloway and others seeking partition of certain lands in Liberty County, including the mineral estate in and under the three tracts described in the first deed. As there was no question between plaintiffs and all of the defendants that plaintiffs owned the surface estate conveyed by both deeds and an undivided one-half of the mineral estate under the three tracts described in the first deed, there was no contest of the right of plaintiffs to the partition sued for. Judgment was accordingly entered whereby there was set aside to plaintiffs all of the surface estate involved and the mineral estate in a segregated one-half of the three tracts described in the deed from Holloway to Reed.

The contest that developed in the case arose over the remaining undivided one-half of the mineral estate previously severed by Holloway from the tracts conveyed to Reed, and was solely between the two sets of defendants, the unknown heirs of F. H. Holloway on the one hand, who became cross-plaintiffs, and those claiming under Jacob C. Baldwin on the other hand, who became cross-defendants, both Holloway and Baldwin being then deceased.

The case was tried upon an agreed statement of facts. It was agreed between cross-plaintiffs and cross-defendants that the reservation clause in the first deed (Holloway to Reed) was sufficient to except from the conveyance an undivided one-half of the minerals under the three tracts and reserve same to the Holloway heirs and assigns; also that the cross-plaintiffs were the heirs of him and his wives, and that the cross-defendants had succeeded to and were in possession and control of the estate of Jacob C. Baldwin. There was no agreement as to any fact dehors the two deeds other than as to the sufficiency of the reservation clause of the first deed.

Judgment was rendered in favor of the cross-defendants, the Baldwin claimants, awarding them title to and possession of the mineral estate in the segregated one-half of the land, which is the mineral estate in question and which shall be hereafter referred to as merely the mineral estate.

The Court of Civil Appeals affirmed the judgment in favor of the Baldwin claimants (104 S. W. (2d) 646), holding, as did the trial court, that the term "land" as used in the deed from Holloway to Baldwin, included the previously severed mineral estate. The writ was granted upon application of the cross-plaintiffs upon their assignment of error complaining of this holding. Whether the holding is correct is the sole question to be considered.

■ The Court of Civil Appeals concluded that the term "land," in view of the language of the portion of the description clauses italicised above, must be held to have included the mineral estate; that since there is no language in the deed to negative such conclusion it necessarily follows under the established rule of construction of the language of deeds that the term "land" must be held to have been used in its unrestricted sense, and to have included all the term was legally capable of including. This conclusion is predicated upon the court's view, briefly stated, as expressed in its opinion, that in a legal sense the mineral estate in place is just as truly "land" after it is severed from the surface by conveyance or reservation from the surface, as the surface is "land" after it is severed from the mineral estate. In reaching this conclusion the court followed the rule stated by this Court in Hopkins v. Hopkins, 103 Texas 15, 122 S. W. 15, in determining the effect of the use of the word "heirs" in the deed there involved. Judge Williams, after pointing out that the mere use of the term "heirs" in that deed was all that militated against the view that the words "issue" and "children," as here used in connection with other language, restricted the *legal meaning* of the term, says:

"As we have seen it is always permissible to ascertain from the whole language of an instrument that that word (heirs) was used in a narrower sense than its true one and to give to it the effect it should have in that narrower sense *provided the other language clearly indicated the restricted use.*" (Italics ours).

Cross-plaintiffs recognize that the same general rule of construction obtains in determining from the description clauses of a deed the intention as to the quantum of land thereby conveyed, as obtains in determining, as in the Hopkins case, to whom the land was conveyed. They frankly admit they have been unable to find any authority in the rules of construction established in this State for holding that a conveyance by such a general description as "all land" owned by grantor within a certain area, would not convey title to a previously reserved mineral estate within such area.

They urge, however, in effect, that when all-inclusive words of description are used in a deed an exception to the general rule should be applied in determining the quantum of land thereby conveyed, such exception being, as applied to a mineral estate previously severed by the grantor from the described surface area, that unless the grantor describes the previously severed estate with such apt words as to clearly identify it as

mineral estate, it will not be held to have been intended to be included in such subsequent deed as a part of the conveyance, notwithstanding the deed contains such all-inclusive words of description as would include the mineral estate if it had not been previously severed.

The language in question in the present deed is that which follows immediately the particular description of the land, and is italicised above. The italicised portion is segregated from the full description and brought forward for convenience. It reads:

"If there is any other land owned by me in Liberty County, Texas, or any land, the title to which stands in my name, it is hereby conveyed, the intention of this instrument being to convey all land owned by me in said County."

Do the foregoing words include within their purview any land other than that particularly described by the immediately preceding language of the full description quoted above? The question is not whether the term "land" includes, ordinarily, when used as a term of description in a deed, the minerals in place under it. It is conceded that it does; also that the mineral estate would have passed to Baldwin in the conveyance in question had it not been theretofore severed by Holloway's reservation. The question, concretely and precisely stated, is, did the parties by the language of the description clauses of the deed from Holloway to Baldwin, above set out, intend to include the previously excepted mineral estate?

Certainly the language last above quoted has no restrictive effect with respect to the quantum of land intended to be conveyed. Unless its purpose is to enlarge the grant described in the immediately preceding language, it has no purpose at all. The concluding words of the description are: "* * * the intention of this instrument being to convey *all land owned by* me *in said (Liberty) County*." (Italics ours). The mineral estate in question is in Liberty County, and was owned by the grantor at the time of his conveyance to Baldwin. Did the fact that Holloway had excepted the mineral estate from his prior conveyance to Reed by particular description, render the severed interest any less truly land than was the surface from which it was severed?

It is not contended by cross-plaintiffs that it is any less truly land than the surface, but rather that the *fact of severance* should indicate clearly that Holloway had no intention to include the severed land in his subsequent deed. In other words

the fact that he particularly described the mineral estate when he reserved it, should, in the absence of his having used such words in his subsequent deed, manifest clearly an intention not to convey it, notwithstanding his use of other words of all-inclusive effect.

It is more logical to conclude that if it had been Holloway's intention not to convey to Baldwin the mineral estate theretofore excepted from his conveyance to Reed, he would have followed the same procedure he followed in that conveyance, to wit that of excepting the mineral estate by apt words of description, instead of using, as he did, the all-inclusive words, "all land owned by me" in Liberty County.

Such, briefly, is our view of the effect of the language of the deed as a whole.

If it should be admitted that there is any uncertainty inhering in any portion of the language employed by Holloway to describe the land intended to be conveyed, the language in its entirety is rendered certain by the concluding statement of the description that it was the grantor's intention to convey all of the land owned by him in Liberty County.

■ All of the language of a deed should be given effect if possible, regardless of whether it contains, as here, a particular description followed by an all-inclusive general description. The rule applicable when words of both general and particular description are used, is stated in Scheller et al v. Groesbeck et al (Com. App.), 231 S. W. 1092, as follows:

"That in the construction of written instruments the cardinal rule to be followed is to arrive at the intention of the parties and that all *parts of a deed shall* be given effect if possible, and where there is a particular description followed by general description the latter shall yield, though where it is possible the *real intent must be gathered from the whole description, including the general, as well as the special * * *,* are all rules of law so familiar that citation of authorities is unnecessary." (Italics ours.)

■ The rule that in construing a deed to ascertain the parties' intention the whole instrument must be looked to and all of its language given effect if agreeable to the rules of law, is of long standing and firmly established in this State. Bumpass v. Bond, 131 Texas 266, 114 S. W. (2d) 1172, 2 T. S. C. R. 577, and cases there cited. We see nothing in the agreed facts of this case to call for a departure from it.

■ To place upon the language of the present deed the con-

struction implied in the contention of cross-plaintiffs would not only constitute a departure from this rule, but would be tantamount to holding that a mineral estate, when constructively severed from the surface by apt words of description, is not "land." Such a holding would be in the teeth of such cases as Texas Company v. Daugherty, 107 Texas 236, 176 S. W. 717, L. R. A. 1917 F, 989; Stephens Co. et al v. Mid-Kansas Oil & Gas Co., 113 Texas 160, 254 S. W. 290, 29 A. L. R. 566; Hager v. Stakes, 116 Texas 453, 294 S. W. 835; Sheffield v. Hogg, 124 Texas 290, 77 S. W. (2d) 1021; Tennant v. Dunn, 130 Texas, 285, 110 S. W. (2d) 53, and numerous other cases of similar import.

There is therefore no necessity of determining whether the authorities in other jurisdictions relied upon by cross-plaintiffs as tending to support their contention, do in fact support it.

We approve the opinion of the Court of Civil Appeals. Its judgment affirming that of the trial court is affirmed.

Opinion adopted by the Supreme Court July 26, 1939.