Stella Ann **MASTERSON** et al., Appellants,

v.

**TEXAS PACIFIC COAL & OIL CO.** et al.,
Appellees.

No. 3620.

Court of Civil Appeals of Texas.

Waco.

June 11, 1959.

Rehearing Denied July 7, 1959.

I. M. Wilford, Andrews, Kurth, Campbell & Bradley, W. M. Streetman, Robert L. Woodward, Horace O. Young, W. J. Knight, Williams, Lee & Lee, Houston,

Jack C. Hardy, Beaumont, Powell, Rauhut, McGinnis & Reavley, Austin, for appellants.

Eugene T. Adair, Ira Butler, R. Daniel Settle, Fort Worth, McLeod, Mills, Shirley & Alexander, Galveston, Liddell, Austin, Dawson & Huggins, Houston, B. F. Whitworth, Jasper, Fountain, Cox, Gaines & Fox, Houston, for appellees.

WILSON, Justice.

This trespass to try title action involves, basically, the construction of a deed. The question is whether title to mineral interests, retained in prior conveyances of five tracts in the same survey, passed by the deed in question.

The Manuel Tijerino Survey was patented in 1850 as 640 acres. Masterson Irrigation Company, the common source, was the owner in fee simple of the entire survey in August, 1917. In that and the following year this corporation executed five deeds to separate tracts in the survey, in each of which it retained an undivided ¼ mineral interest; describing each by metes and bounds. The recited acreages in these conveyances were: 65 acres to Matlage, 110 acres to Treseler, 65 acres to Mueller, 113⅔ acres to Werner and 100 acres to Theis. The survey, for our purposes, is roughly in the form of a square. The first three mentioned tracts comprise approximately the west one-third of the survey. The two latter may be said to represent the northern half of the remaining two-thirds. The aggregate recited acreage in these five deeds was 453.6, which, subtracted from the 640 acres specified in the patent, left 186.4 acres arithmetically remaining unsold in the southeast corner of the survey.

Masterson Irrigation Company was a family corporation. By a family agreement the widow and five children of Harris Masterson made a division of the properties in this and other such corporations in 1920 by drawing lots. T. S. Masterson's lot included a tract identified as 186.4 acres in the Manuel Tijerino Survey. The day following this drawing the corporation, by T. S. Masterson as president, attested by N. T. Masterson, as secretary, executed a deed to T. S. Masterson. The latter, having expressed dissatisfaction with the values assigned to properties he drew and which his brother agreed to buy, executed a deed the same day to N. T. Masterson. The language in these two deeds which leads to the present controversy is as follows:

> " * * * do bargain, sell and convey the following [described] tract or parcel of land lying and being situated in the County of Harris, State of Texas [described] as follows, to-wit:—All the unsold portion containing 186.4 acres out of the 640 acres known as the Manuel Tijerino Survey patented to Stiles Curtis Assignee * * *."

The trial court submitted to a jury an issue as to intention of the parties. The answer was to the effect the parties did not intend by these two instruments to convey the ¼ mineral interest reserved by the corporation in the five previous deeds. Motions for judgment non obstante veredicto by defendant-appellees were granted, and a take-nothing judgment was rendered against appellants.

Appellees contend the quoted language, although not referring specifically to the mineral interest retained in the five deeds by the corporation, had the effect of passing it. They place primary emphasis on the words, "all the unsold portion" as being key words inducing this construction, because the corporation had not sold the mineral interest; and it was a "portion" of the survey. They say the word "parcel" in the phrase "tract or parcel of land," and the word "portion" are collective nouns, and refer to a "group or collection of land"; that the word "containing" is subordinate and means "including"; that the word "tract" is merely formal and meaningless. They urge resort to various legal and grammatical rules of construction. In effect,

they contend the language does not simply describe a tract of land; but this tract plus the undivided interest in the mineral estate in the five other tracts.

■ In our judgment it requires a distortion of the language employed to effect this result. The words used to express intent designate what is to be conveyed: "the following [described] tract or parcel of land" (singular). It is declared unequivocally that this tract or parcel contains 186.4 acres. It is announced that this is the mathematical residue ("all the unsold portion") after deducting the total recited acreage of 453.6 of the five prior deeds from the 640 acres known as the Manuel Tijerino Survey. It is asserted the two are equivalents. This simply made a detailed metes and bounds description unnecessary, and identified the 186.4 acres conveyed as being the 186.4 acres not theretofore sold. The language refers to area and not to estate or interest. The deed did not pass the mineral interest in the five other tracts which had been sold. Regan v. Hatch, 1898, 91 Tex. 616, 45 S.W. 386.

Appellees further take the position that the words "containing 186.4 acres" should be disregarded and rejected as false because the survey actually contains in excess of 640 acres, and the acreage remaining after the five prior conveyances is more than 186.4. Actual survey in 1954 showed the Tijerino survey to contain 696.20 acres. Computation of the acreage of the five tracts sold and a projection of survey lines showed the unsold tract to have an area of approximately 240 acres. Deeds to Matlage and Werner called for a north survey line of 1914.84 varas; whereas the patent call was 1681.75 varas.

They rely on Hunter v. Morse's Heirs, 49 Tex. 219 and Houston Oil Co. of Texas v. Kirkindall, 136 Tex. 103, 145 S.W.2d 1074, 1075. These cases do not support the position. In both cases the basis for the holding or dictum is that without general descriptions of "undivided part" or "remaining part" after tracts previously sold were deducted, there was a total want of identification or means of location. In Hunter v. Morse, one prior conveyance merely described "a straight line across the league." The circumstance that the league contained an excess was ignored in the decision. As to this the court said if the grantor "is satisfied, it does not lie in the mouths of strangers to complain."

The language in the Kirkindall case relied on by appellees on this point, if considered as a direct holding, merely demonstrated that since it was impossible to locate an 18 acre tract which was undescribed, and since there was an additional 25 acres not previously conveyed, the instrument, (if treated as a deed of conveyance) would cover all unsold land in 160 acres because it recited "being the remaining part of said homestead tract after deducting the various tracts * * * heretofore sold from said homestead tract and being *all the interest that we own in the same.*" The court then held directly the instrument was not one of conveyance but of partition and the identification could be made certain by parol.

Appellees also seek generally to apply rules announced in Holloway's Unknown Heirs v. Whatley, 133 Tex. 608, 131 S.W. 2d 89, 90, 123 A.L.R. 843. This decision actually militates against their contention. There the words of the deed were "all of my interest of whatsoever character and description"; and, after referring to specific acreage, "If there is any other land owned by me in Liberty County, Texas, or any land, the title to which stands in my name, it is hereby conveyed, the intention of this instrument being to convey all land owned by me in said County." It was not contended that "land" did not include minerals in place. The court simply announced the inescapable conclusion that the general language included "land other than that particularly described." The language is not remotely comparable to that presented here. Neither are we confronted with a question of whether an acreage call controls the

estate or interest conveyed by a deed, as in other cases cited.

Such cases as Wadsworth v. Vinyard, 105 Tex. 245, 147 S.W. 560; Mackechney v. Temple Lumber Co., Tex.Com.App., 228 S.W. 177, 179, which are urged to sustain the contention, hold only that "where a specified tract of land is named, the entire tract passes, although it exceeds the quantity mentioned." This rule does not aid appellees. We have here neither a "Mother Hubbard" nor a "not only, but also" clause such as in Smith v. Allison, Tex., 301 S.W. 2d 608.

We are not willing to hold that because both the survey and the tract conveyed contained acreage in excess of that recited, we should disregard and reject the verbiage "containing 186.4 acres." It would be just as logical to reject and ignore as false "the 640 acres known as the Manuel Tijerino Survey". The parties used both, as complementary and co-ordinate. They treated and considered the survey as containing 640 acres, subtracted the recited acreage sold and computed the residual acreage on an identical basis. Even if we consider these two expressions as isolated segments of the terminology we can not reject one as false and affirm the other as true. The holding sought would apply to both. In our opinion they do not conflict, but are consistent.

Under our view of this case, since the mineral interest did not pass, it is unnecessary to elaborate on practical construction of the parties; the question of estoppel; or the validity of appellee's claims deraigned through abstract of judgment liens.

 Appellees next assert that if we are correct in our holding that the minerals involved did not pass by the deeds, the trial court nevertheless properly rendered judgment non obstante veredicto because appellants failed to establish the exact interest owned by each of them therein. Since appellees own leasehold, royalty or other interests in the mineral interest involved and are not strangers to appellants'

title, the burden was on appellants to show specific interests, and the extent thereof as a basis for proper judgment. Steddum v. Kirby Lumber Co., 110 Tex. 513, 221 S.W. 920; Baldwin v. Goldfrank, 88 Tex. 249, 31 S.W. 1064.

As to the appellants, the "Farish Group", the present record makes it clear that they deraign a perfect legal title to an undivided 1/44 interest in the mineral estate, through a regular chain of conveyances and are not involved in this question.

As between the other appellants and appellees, the problem arises as follows: upon dissolution of Masterson Irrigation Co. in May, 1921, the title to the 1/4 mineral interest reserved in the five deeds vested in T. S. Masterson, Louise J. Masterson, Roene Cage, Harris Masterson, Jr., H. B. Masterson and N. T Masterson, (its stockholders) in the proportions of 1/11 to H. B. Masterson and 2/11 to the other members of the Masterson family. Issues submitted to the jury also elicited findings to this effect. Appellants' title under those interests, which now involve numerous fractional ownerships, may be traced with certainty, but, determination of definite and specific interests is complicated by two conveyances now to be noticed:

(1) In 1933 a deed was executed by the executors of the Estate of H. Masterson, deceased, and by three trustees of stockholders of the dissolved corporation, conveying an undivided 1/44 mineral interest in the five tracts. This deed was recorded in 1933. The grantee conveyed to Mrs. Masterson (who had then acquired H. B. Masterson's 1/11).

Appellants concede the record does not adequately establish that the mineral interest conveyed by this deed was to be charged against the beneficial interest of any one Masterson, but contend that in any event a 1/44 interest passed. They submit that the only appropriate way to charge the burden of the conveyance is by treating it as being out of the entire retained 1/4 interest of the dissolved corporation.

(2) In 1936, T. S. Masterson and Roene Cage, as executors, and the trustees of the dissolved corporation, executed a deed recorded in 1937 to $\frac{1}{44}$ mineral interest to Mrs. Cage (who owned $\frac{2}{11}$ of the $\frac{1}{4}$ total interest at dissolution, half of which passed to the "Farish Group" subject to leases). The executrix of the estate of H. Masterson, Jr., deceased, and the other Mastersons, joined in executing this deed. Appellants concede there is nothing in the record to show how the burden of this conveyance should be borne. Since it described the same interest she then owned, appellants assert it was intended to make legal and recordable the unrecordable beneficial interest which she thereupon exercised by a lease. Alternatively, they state if this deed is regarded as conveying an additional interest, it also should be treated as a conveyance by the trustees; or that since grantors were fiduciaries their individual interests passed. They suggest additional theories and alternative methods of determining interests, any of which would reasonably account for the total $\frac{1}{4}$ retained in the five deeds.

The factual background existing at the time these two instruments were executed is so complex that an analysis would not be helpful. Any effort on our part to formulate a determination of (1) whether any interest was intended to pass by one or both of the deeds; or (2) to whom the burden of any such interest should be charged, would involve ascertainment of matters of fact. The state of this record did not justify rendition of judgment below against appellants. This court is neither willing nor authorized to select any alternative based on innumerable evidentiary factors as a basis for findings on these questions. To do so would affect interests as to which the record is not fully developed. For this reason, the judgment is reversed and the cause remanded to the trial court for further proceedings not inconsistent with this opinion. Steddum v. Kirby Lumber Co., 110 Tex. 513, 221 S.W. 920.