TEXAS PACIFIC COAL & OIL CO. ET AL V. STELLA MASTERSON
ET AL.

No. A-7470. Decided March 30, 1960.
Rehearing Overruled May 11, 1960.
(334 S.W. 2d Series 436)

*Eugene T. Adair, Ira Butler* and *R. Daniel Settle,* all of Fort Worth, *McLeod, Mills, Shirley & Alexander* and *Preston Shirley,* all of Galveston ,for Texas Pacific Coal and Oil Company, *Fountain, Cox, Gaines & Fox* and *Joyce Cox, of Houston,* for Herbert E. Williams.

The Court of Civil Appeals erred in construing the deed in question as not conveying "all the unsold portion" of the Tijerino survey including the minerals in question. Holloway's Unknown Heirs v. Whatley, 133 Texas 608, 131 S.W. 2d 89; Cartwright v. Trueblood, 90 Texas 535, 39 S.W. 930; Bruni v. Vidauri, 140 Texas 138, 166 S.W. 2d 81.

*B. F. Whitworth,* of Jasper, for E. E. Weaver and Phil D. Wooduff, *Liddell, Austin, Dawson & Huggins* and *Dwight H. Austin,* of Houston for George B. Adams and Confederate Development Company.

*I. M. Wilford, Andrews, Kurth, Campbell & Bradley* and *W. M. Streetman,* all of Houston, for Stella Ann Masterson. *Jack C. Hardy,* of Beaumont, *Williams, Lee & Lee, Jesse J. Lee* and *Thomas H. Lee,* all of Houston, for Sun Oil Company.

The Court of Civil Appeals erred in failing to render judgment for the Masterson's et al because the record in this case reflects perfect legal title in each appellant to a definite interest in the property in controversy. Allday v. Drummond, 280 S.W. 2d 381, writ of error refused, no reversible error; Dall v. Lindsey, 237 S.W. 2d 1006.

*Powell, Rauhut, McGinnis & Reavley* and *Tom Reavley,* all of Austin, for Lawther Corporation.

*William J. Knight,* of Houston, for the Farish group.

MR. JUSTICE SMITH delivered the opinion of the Court.

As originally instituted, this was a suit brought by respondents against petitioners on two causes of action: The first was a statutory trespass to try title action in respect to seven-elevenths (7/11) interest in a specific one-fourth (1/4) mineral interest in five tracts of land in the Manuel Tijerino Survey in Harris County, Texas. The second cause of action was an action

for the value of oil and gas produced from and in respect to the mineral interest sued for by respondents. The title controversy was severed by order of the trial court from the money controversy, and we are concerned here only with the issue raised between all parties as to title. The trial was before the court with the intervention of a jury. By trial amendment the fraction 7/11 mentioned above was changed to 94/132. Two of the defendants named in respondents' suit filed cross-actions, also asserting interests in these tracts; however, their asserted rights stem from those of the original plaintiffs.

The jury returned a verdict favorable to the plaintiffs and cross-plaintiffs, but the trial court granted the remaining defendants' motion for judgment non obstante veredicto and rendered a take-nothing judgment against the plaintiffs and cross-plaintiffs. On appeal, the Court of Civil Appeals for the Tenth Supreme Judicial District reversed the judgment of the trial court and remanded the case to that court for further proceedings not inconsistent with its opinion. 325 S.W. 2d 834.

Since the contentions of the parties other than those named in the style of the case may be aligned either with the contentions of the Texas Pacific Coal & Oil Company interests, or with the Masterson interests, it will be convenient to group the parties together for reference. Those who were plaintiffs or cross-plaintiffs in the trial court will be designated as the Masterson group and those who were defendants the Texas Pacific group.

Both groups have presented applications for writs of error to this court. The Masterson group contends that judgment should have been rendered in its favor because the record in this case reflects a perfect legal title in each member of the group to a definite and specific interest in the land in controversy.

The Texas Pacific group contends that the record shows as a matter of law that the members of its group are the owners of the land in controversy, and that, therefore, the trial court correctly entered its judgment non obstante veredicto, and the Court of Civil Appeals erred in holding to the contrary. This group urges other alternative points, but our view of the decisive question renders it unnecessary to pass upon such points.

We have concluded to reverse the judgment of the Court of Civil Appeals and affirm that of the trial court for the reasons now to be stated.

Our decision turns on the construction to be given a certain

deed dated October 9, 1920, from Masterson Irrigation Company to T. S. Masterson. The granting clause of the deed reads:

"* * * do bargain, sell and convey unto the said T. S. Masterson, the following tract or parcel of land lying and being situated in the County of Harris, and State of Texas, described as follows, to-wit: All the unsold portion containing 186.4 acres out of the 640 acres known as the Manuel Tigerino Survey patented to Stiles Curtis Assignee October 15, 1850 by patent #460, Volume #3, Abstract #763, and more fully described my metes and bounds in said patent recorded in Harris County, Texas, Deed Records, Volume 'N' page 546, to which reference is here made."

The decisive question presented is this: Did the deed of October 9, 1920, convey "all the unsold portion" of the grantor's interest in the Manuel Tigerino Survey, or did the phrase "containing 186.4 acres" have the legal effect of restricting the conveyance to less than the unsold portion? The record is undisputed that the Masterson Irrigation Company on October 9, 1920, the date of the above deed, owned a larger interest in the Manuel Tigerino Survey than 186.4 acres. In 1917, the irrigation company was the owner in fee simple of the entire survey. During that year and the following year, it conveyed by five separate deeds to five grantees, Matlage 65 acres; Tressler 110 acres; Mueller 65 acres; Werner 113.6 acres, and Theis 100 acres. The irrigation company retained an undivided 1/4 mineral interest in each tract. It was stipulated in the trial of this case that the Masterson Irrigation Company had not previously sold or conveyed any of such survey. Thus it is uncontroverted that on October 9, 1920, the portion of *the survey* then unsold consisted of the minerals reserved in each of the five deeds, plus the remainder of the surface and minerals after deducting the specific acreage conveyed in each of the five deeds.

1 In 1921, the Masterson Irrigation Company was dissolved. This is significant only in explanation of the reason for the suit being filed by the Masterson group claiming title to the 1/4 undivided mineral interest as shareholders and distributees of the residuary assets of the Masterson Irrigation Company. It is our view that Masterson Irrigation Company in its deed to T. S. Masterson did not retain the title to the 1/4 mineral interest in the five tracts aggregating 453.75 acres. Therefore, upon the dissolution of the irrigation company there were no residuary assets so far as the 1/4 mineral interest involved in this suit was concerned. Consequently, no title passed upon the

dissolution of the corporation to the owners of the Masterson Irrigation Company, under whom the Masterson group claims.

2,3 The minerals were a part of the land just as much as any other part of the land, and passed with the grant of everything owned. "All the unsold portion" under the facts in this case means all the grantor's (Irrigation Company) interest in the survey. See Hunter v. Morse's Heirs, 49 Texas 219 (1878); Smith v. Clay, Texas Civ. App. (1900), 57 S.W. 74 wr. dism; Falls Land & Cattle Company v. Chisholm, 71 Texas 523, 9 S.W. 479 (1888); Delvin on Real Estate, III Edition, Vol. 2, #1044, p. 2027. In the latter case, this court held that a deed describing the land conveyed as "all the lands * * * to me granted by the State of Texas that have not been legally sold or disposed of for location, * * * and fully described in patent which accompanies this deed" was not void for uncertainty. In the present case the Masterson group does not claim that the deed under consideration is void for uncertainty, but contends that the phrase "containing 186.4 acres" has the effect of limiting the deed to a conveyance of something less than "all the unsold portion." As was said in the case of Cartwright v. Trueblood, 90 Texas 535, 39 S.W. 930, 931: "Every part of the deed must be given effect if it can be done, and when all of the parts are harmonized, the largest estate that its terms will permit of will be conferred upon the grantee. Hancock v. Butler, 21 Texas, [804], 816." It has been uniformly recognized that on the question of construction of deeds as to the interest conveyed, the court will look to the key word or words of the conveyance. See Skinner v. Noland, 154 Texas 615, 281 S.W. 2d 332. In the present case the Masterson group in substance assert that the key words are "containing 186.4 acres," while the Texas Pacific group contends the key is "all the unsold portion." We agree with this latter contention. The call for acreage in a deed is the least reliable of all calls in a deed. In the description of land it is not unusual to add a clause stating that the land described containtd so many acres. The mention of the quantity of land conveved may aid in defining the premises, but it cannot control the rest of the description unless there is an express covenant in the deed that the acreage mentioned is the only land to be conveyed. See Delvin on Real Estate, supra. The clause as to quantity is considered simply as a part of the description and will be rejected if it is inconsistent with the actual land conveyed. Whether the stated acreage of 186.4 acres is disregarded or whether it is considered as being included as a part only of "all the unsold portion," the result is the same. The rule announced in Cartwright v. Trueblood, supra, prohibits the con-

struction of the deed as contended for by the Masterson group. The rule requires construction of the phrases in question in such way that they will not stand in direct conflict with that part of the conveyance which grants the whole interest. A construction should be given so as to harmonize the whole. Moreover, a construction should not be given so as to transmute that which should be disregarded, if unavoidably in conflict with the controlling language, and which would destroy the key expression of intent. See Bruni v. Vidaurri, 140 Texas 138, 166 S.W. 2d 81.

4 Both the Masterson and Texas Pacific groups agree that the deed under consideration is unambiguous, and that the construction of the deed to determine what land was intended to be conveyed is for the court and not for the jury. Therefore, the jury finding of intent and to certain other controversial phases of evidentiary matter can have no legal effect in determining the quantum of land conveyed by the deed. The intent to convey "all the unsold portion" is ascertainable from the face of the deed and therefore controlling, and may not be destroyed by construction, as a matter of law. See Bruni v. Vidauri, supra; and West v. Hermann, 47 Texas Civ. App. 131, 104 S.W. 428, no writ history. In the present case the subsequent addition of the phrase "containing 186.4 acres" should not be permitted to limit or impair what has been definitely and certainly described in the deed. See Haley v. Murray, Texas Civ. App., 177 S.W. 2d 333, er. ref. w.o.m.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Opinion delivered March 30, 1960.

MR. JUSTICE WALKER joined by JUSTICES CALVERT and CULVER, dissenting.

For the reasons stated in its opinion, I agree with the Court of Civil Appeals that the mineral interests were not intended to be conveyed by the deed in question. 325 S.W. 2d 834. It would be necessary to decide other questions if this view were adopted by the majority, but no useful purpose will be served by attempting to discuss such questions here.

Four motions for rehearing overruled May 11, 1960.

Opinion delivered March 30, 1960.