# NO. 12-10-00250-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *LAMAR ELDER, JR., FERRIA JEAN ELDER, LACETTA R. ELDER, PAMELA ELDER, BARBARA F. COX, NATHAN JONES AND RODNEY ELDER, APPELLANTS* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW #2* |
| *ANADARKO E & P COMPANY, L.P., QUEST ENERGIES, LLC AND QUEST ENERGIES GROUP, LTD., APPELLEES* | § | *GREGG COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

The question in this trespass to try title action is whether Appellants' predecessor in title conveyed by royalty contract her royalty interests in Rusk County or in Rusk and Gregg Counties. The trial court found the royalty contract was not ambiguous and that it conveyed the described royalty interests in both Rusk and Gregg Counties. In three issues, Appellants, who are pro se, assert that the royalty contract conveyed only the Rusk County royalty interests. We affirm.

### BACKGROUND

Almora Kennedy Elder executed a royalty contract conveying an undivided 8/8 royalty interest in certain tracts to Quest Energies Group, Ltd. The granting clause described the property conveyed as an undivided 8/8 interest in the royalty in "the following described lands situated in the County of Rusk, to wit: (see Exhibit "A" attached hereto and made a part hereof)." Exhibit "A" recites that it is "attached to and by reference made a part of that certain royalty contract made and entered into by and between Almora Kennedy Elder and Quest

Energies Group, Ltd." Exhibit "A" then lists and describes twelve tracts, four in Rusk County and eight in Gregg County.

Appellants, beneficiaries of the estate of Almora Kennedy Elder, sued Appellees in Gregg County for trespass to try title and a declaratory judgment contending that the royalty contract conveyed royalty only in the Rusk County tracts.[1] The Quest entities (Quest) responded with an original answer and an amended counterclaim seeking a declaratory judgment that the royalty contract conveyed royalties in both Rusk and Gregg Counties. The cause was submitted to the trial court on stipulated facts. The trial court entered judgment in favor of Quest on its counterclaim holding that the royalty contract conveyed royalties in both Rusk and Gregg Counties.

## INTERPRETATION OF THE ROYALTY CONTRACT

In their first two issues, Appellants argue that the trial court erroneously concluded the royalty contract conveyed royalty in both Rusk and Gregg Counties. Specifically, they complain about the trial court's application of the law relating to the interpretation of written instruments.

### Interpreting Written Instruments

The question of whether a written instrument is ambiguous is a question of law. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). "If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law." *SAS Institute, Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005). An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract. *Columbia Gas Trans. Corp. v. New Ulm Gas*, 940 S.W.2d 587, 589 (Tex. 1996). If the contract is subject to two or more reasonable interpretations *after* applying the pertinent rules of construction, the contract is ambiguous. *Id*. But if *after we apply the relevant rules of construction*, a contract can be given a definite legal meaning, the contract is unambiguous, and we construe it as a matter of law. *Frost Nat'l Bank v. L & F Distributors, Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005).

Appellants argue that in determining whether the contract is ambiguous, the court must first interpret the contract by applying "rules of interpretation." If the application of the rules of

---

[1] The appellants are Lamar Elder, Jr., Ferria Jean Elder, Nathan Jones, Barbara F. Cox, Lacetta R. Elder, Pamela Elder, and Rodney Elder. The appellees are Anadarko E&P Company, L.P., Quest Energies, LLC, and Quest Energies Group, Ltd., successor in interest to Quest Energies, LLC. Anadarko did not file a brief.

interpretation yields two reasonable interpretations, the contract is ambiguous. According to this view, only if the contract is ambiguous should the court proceed to construe the contract by applying the canons of construction, presumably with the aid of parol evidence. *See, e.g., Moon Royalty, LLC v. Boldrick Partners*, 244 S.W.3d 391, 394 (Tex. App.–Eastland 2007, no pet.); *Stewman Ranch, Inc. v. Double M. Ranch, Ltd*., 192 S.W.3d 808, 811 (Tex. App.–Eastland 2006, pet. denied). It is true that the Eastland court of appeals has employed this two step process to first "interpret" and then "construe" a document. However, this has not been the method used by other Texas courts, including the supreme court and this court, in determining whether a deed is ambiguous.

In practice, the courts of Texas and other jurisdictions have used the terms "interpretation" and "construction" interchangeably. Consequently, both terms have been used to refer to the rules or canons applied by courts to determine whether a written instrument is ambiguous. For example, Justice Calvert in *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 518, 243 S.W.2d 154, 157 (1951), stated that "a contract is ambiguous only when the application of pertinent rules of *interpretation* to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning." (Emphasis added.). In citing *Daniel*, the Texarkana court of appeals said "[a]n instrument is ambiguous only when the application of pertinent rules of *construction* leaves it genuinely uncertain which of two reasonable meanings is the proper one." *Prairie Producing Co. v. Schlacter*, 786 S.W.2d 409, 413 (Tex. App.–Texarkana 1990, writ denied) (emphasis added). In *Davis v. Andrews*, 361 S.W.2d 419 (Tex. Civ. App.–Dallas 1962, writ ref'd n.r.e.), the Dallas court of appeals clearly regarded the terms as synonymous.

> A contract is not ambiguous in the sense that parol evidence is admissible to explain its meaning unless application of the pertinent rules of *interpretation* leave a real uncertainty as to which of two or more possible meanings represent[s] the true intention of the parties. An application of the rules of *construction, discussed above*, reveals no conflict of meaning, and therefore no ambiguity results.

*Id*. at 425 (emphasis added). This court has also used "interpretation" and "construction" interchangeably. *See EOG Resources v. Wall*, 160 S.W. 3d 130, 136 (Tex. App.–Tyler 2005, no pet.). In *Columbia Gas*, the supreme court cited *Daniel* stating that "if the contract is subject to two or more *interpretations after* applying the pertinent rules of *construction*, the contract is

ambiguous. . . ." *Columbia Gas*, 940 S.W.2d at 589 (emphasis added); *see also* **Frost Nat'l Bank**, 165 S.W.3d at 312; **J.M. Davidson v. Webster**, 128 S.W.3d 223, 229 (Tex. 2003).

The law review article cited by Appellants contains a comprehensive compilation of what the author terms "canons of construction" and an exhaustive review of their application. *See generally* Bruce M. Kramer, *The Sisyphean Task of Interpreting Mineral Deeds and Leases: An Encyclopedia of Canons of Construction*, 24 TEX. TECH. L. REV. 1 (1993). What Appellants call "rules of interpretation" are among the cardinal rules the author describes as "canons of construction," which illustrates the role of semantic confusion in treatments of the subject. But it further demonstrates, and perhaps explains, the interchangeability, in practice, of "interpretation" and "construction." The author notes that the canons "should not be used as a substitute for common sense and an understanding of the English language," but only to assist in effecting the intent of the parties. *Id*. at 129. The article is replete with examples where subsidiary canons have been misapplied or applied inconsistently. Nevertheless, after an encyclopedic study, the author concludes that the modern tendency is to use canons of construction, not only as Appellants advocate, after a preliminary determination of ambiguity, but in order to *avoid* a finding of ambiguity. *See* **id**. at 2, 5.

The inclination of the courts to use the canons of construction has a practical basis. It avoids the difficulties inherent in the admission of extrinsic evidence. "Individual adjudication of deeds would lead to disparate results depending on circumstances extraneous to the instrument." **Id.** at 19. It would also complicate the job of title examiners who would be unable to rely on the written word. **Id**.

## Rules of Construction

The first rule of construction is to ascertain and give effect to the parties' intentions as expressed in the document. **Frost Nat'l Bank**, 165 S.W.3d at 311-12. "The intention is to be ascertained as expressed by the language used, and not the intention which may have existed in the minds of [the makers], but is not expressed by their language." **Slavens v. James**, 229 S.W. 317, 318 (Tex. Comm'n App. 1921, judgm't adopted). In construing a deed to ascertain the parties' intention, the whole instrument must be looked to and all of its parts and all of its language given effect if possible. **Holloway's Unknown Heirs v. Whatley**, 133 Tex. 608, 614, 131 S.W.2d 89, 92 (1939). "The parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement. Even if different parts of the deed appear

contradictory or inconsistent, the court must strive to harmonize all of the parts, construing the instrument to give effect to all its provisions." *Luckel v. White*, 819 S.W.2d 459, 462 (Tex. 1991) (citations omitted). "The court should not strike down any part of the deed, unless there is an irreconcilable conflict wherein one part of the instrument destroys in effect another part thereof." *Id.* No single provision should be given controlling effect. *J. M. Davidson, Inc.*, 128 S.W.3d at 229. Labels given the clauses of "granting," "warranty," "habendum," and "future lease" are not controlling, and the substance of unambiguous provisions should be given effect. *Luckel*, 819 S.W. at 463. "The relative positions of the different parts of the instrument are not necessarily controlling; the modern and sounder [view] being to ignore the technical distinctions between the various parts of the deed, and to seek the grantor's intention from them all without undue preference to any. . . ." *Reynolds v. McMan Oil & Gas Co.*, 11 S.W.2d 778, 781 (Tex. Comm'n App. 1928, holding approved).

Two subsidiary rules or canons of construction are relevant to the instant case. In *Cullers v. Platt*, 81 Tex. 258, 263, 16 S.W. 1003, 1005 (1891), the court stated that "where there is a repugnance between a general and a particular description in a deed, the latter will control . . . , although, whenever it is possible, the real intent must be gathered from the whole description. . . ." And in *Gibson v. Watson*, 315 S.W.2d 48, 57 (Tex. Civ. App.–Texarkana 1958, writ ref'd n.r.e.), the court stated that it was well settled law that "a general description may be looked to in aid of a particular description that is defective or doubtful, but will not control or override a particular description about which there can be no doubt."

A canon of construction followed by the supreme court is also particularly applicable here; in resolving conflicts, "typewritten matter in a contract must be given effect over printed matter." *McMahon v. Christmann*, 157 Tex. 403, 407, 303 S.W.2d 341, 344 (1957). In another case, the Fort Worth court of appeals stated the "nonprinted over printed" canon of construction, as follows:

> It is a well-recognized rule of construction that where a part of a contract is written, or typewritten, and part is printed, and the written and printed parts are apparently inconsistent, or there is reasonable doubt as to the sense and the meaning of the whole, the words in writing will control the construction of the contract.

*Producers' Oil Co. v. Snyder*, 190 S.W. 514, 515-16 (Tex. Civ. App.–Fort Worth 1916, no writ).

Quest cites two other subsidiary rules of construction. One is that a deed will be construed to confer upon the grantee the greatest estate its terms will permit. *Waters v. Ellis*, 158 Tex. 342, 347, 312 S.W.2d 231, 234 (1958); *Easton v. Dial*, 288 S.W.3d 491, 500 (Tex. App.–San Antonio 2009, pet. denied). The other is that "grants are liberally, exceptions strictly, construed against the grantor." *Davis*, 361 S.W.2d at 423.

## Application

None of the parties contend the royalty contract in question is ambiguous. We also conclude that it is unambiguous. Accordingly, we will construe the royalty contract, applying the rules of construction to the extent necessary.

Appellants' view is that since only Rusk County is named in the space in the printed instrument, only the royalty in the four Rusk County tracts listed in Exhibit "A" was conveyed to Quest. Although Exhibit "A" is specifically made a part of the granting clause, Appellants contend that the eight Gregg County tracts listed in the exhibit were not conveyed, because their description in Exhibit "A" was merely surplusage and should be ignored.

Appellants' interpretation requires that the blank in the granting clause of the printed form that contains the word "Rusk" be viewed in isolation and given controlling effect over the specific legal descriptions shown in Exhibit "A," also a part of the granting clause. This violates one of the cardinal rules of construction–that we consider the entire writing and attempt to harmonize and give effect to all its provisions. *Frost Nat'l Bank*, 165 S.W.3d at 312. A court is to presume that the parties intend every clause to have some effect. *See Steeger v. Beard Drilling, Inc.*, 371 S.W.2d 684, 688 (Tex. 1963); *see also Heritage Res., Inc.*, 939 S.W.2d at 121. The omission of "Gregg County" from the blank provided in the form does not limit the conveyance of the royalty in and under the Gregg County tracts specifically described in Exhibit "A" and made a part of the granting clause. In considering the entire royalty contract in an effort to harmonize and give effect to all its provisions, we conclude that the royalty contract conveys the royalty in all of the tracts specifically described in Exhibit "A."

Appellants describe Exhibit "A" as "boilerplate," rather than the printed form, although Exhibit "A" is typewritten and contains a particular description. In their reliance on the printed form, it is Appellants who are relying on "boilerplate." As has been noted, common sense and practical experience teach that the parties may not always read or understand what is contained in the printed form. Kramer, *supra*, at 96. They are much more likely to have read and discussed

the typewritten description added, in this instance, to the granting clause as Exhibit "A." *See id*. Therefore, the description in Exhibit "A" best evidences the intent of the parties.

Although not necessary to the result, our determination is consistent with the subsidiary canons cited by Quest. It confers on the grantee the greatest estate the terms of the royalty contract will permit. *See Waters*, 312 S.W.2d at 234. It also construes the grant liberally and construes the exceptions against the grantor. *See Davis*, 361 S.W.2d at 423.

The trial court did not err in concluding that the royalty contract conveyed the royalties in both Rusk and Gregg Counties. Appellants' first and second issues are overruled.

### STATUTE OF LIMITATIONS AND LACHES

In their third issue, Appellants contend that "the trial court erred in failing to find that the statute of limitations and laches barred recovery of payments made to Appellees under the royalty contract prior to January 21, 2006."

Quest in its counterclaim made no claim for recovery of any royalty paid to Appellants prior to January 21, 2006, and the judgment made no such award to Quest. As Appellants state, Quest readily acknowledged that the two year statute of limitations would bar recovery of royalties improperly paid to Appellants prior to January 21, 2006 (two years before Quest's counterclaim was filed). Quest agreed to limit its recovery of past royalties to only those royalties held in suspense, and these were the only funds the trial court ordered paid to Quest.

Appellants' third issue is without merit and is overruled.

### DISPOSITION

The judgment of the trial court is *affirmed*.

### BILL BASS
Justice

Opinion delivered July 13, 2011.
*Panel consisted of Griffith, J., Hoyle, J., and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*

(PUBLISH)