NO. 12-10-00250-CV

 

IN THE COURT OF APPEALS          

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

LAMAR ELDER, JR., FERRIA JEAN       
   §                  APPEAL FROM THE

ELDER, LACETTA R. ELDER,
PAMELA 

ELDER, BARBARA F. COX, NATHAN


JONES AND RODNEY ELDER,

APPELLANTS                      

 

V.                                                                    
 §                    COUNTY COURT AT LAW #2

                        

ANADARKO E & P COMPANY,
L.P.,

QUEST ENERGIES, LLC AND
QUEST

ENERGIES GROUP, LTD.,            

APPELLEES                                                               §                    GREGG
COUNTY, TEXAS







MEMORANDUM
OPINION

            The
question in this trespass to try title action is whether Appellants’
predecessor in title conveyed by royalty contract her royalty interests in Rusk
County or in Rusk and Gregg Counties.  The trial court found the royalty
contract was not ambiguous and that it conveyed the described royalty interests
in both Rusk and Gregg Counties.  In three issues, Appellants, who are pro se,
assert that the royalty contract conveyed only the Rusk County royalty
interests.  We affirm.

 

Background

            Almora
Kennedy Elder executed a royalty contract conveying an undivided 8/8 royalty
interest in certain tracts to Quest Energies Group, Ltd.  The granting clause
described the property conveyed as an undivided 8/8 interest in the royalty in
“the following described lands situated in the County of Rusk, to wit:  (see Exhibit
“A” attached hereto and made a part hereof).”  Exhibit “A” recites that it is
“attached to and by reference made a part of that certain royalty contract made
and entered into by and between Almora Kennedy Elder and Quest Energies Group,
Ltd.”  Exhibit “A” then lists and describes twelve tracts, four in Rusk County
and eight in Gregg County.

            Appellants,
beneficiaries of the estate of Almora Kennedy Elder, sued Appellees in Gregg
County for trespass to try title and a declaratory judgment contending that the
royalty contract conveyed royalty only in the Rusk County tracts.[1] 
The Quest entities (Quest) responded with an original answer and an amended counterclaim
seeking a declaratory judgment that the royalty contract conveyed royalties in both
Rusk and Gregg Counties.  The cause was submitted to the trial court on
stipulated facts.  The trial court entered judgment in favor of Quest on its
counterclaim holding that the royalty contract conveyed royalties in both Rusk
and Gregg Counties.

 

Interpretation of the Royalty Contract

            In
their first two issues, Appellants argue that the trial court erroneously
concluded the royalty contract conveyed royalty in both Rusk and Gregg
Counties.  Specifically, they complain about the trial court’s application of
the law relating to the interpretation of written instruments.

Interpreting
Written Instruments

            The
question of whether a written instrument is ambiguous is a question of law.  Heritage
Res., Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex. 1996).  “If the
written instrument is so worded that it can be given a certain or definite
legal meaning or interpretation, then it is not ambiguous and the court will
construe the contract as a matter of law.”  SAS Institute, Inc. v.
Breitenfeld, 167 S.W.3d 840, 841 (Tex. 2005).  An ambiguity does not
arise simply because the parties advance conflicting interpretations of the
contract.  Columbia Gas Trans. Corp. v. New Ulm Gas, 940 S.W.2d
587, 589 (Tex. 1996).  If the contract is subject to two or more reasonable
interpretations after applying the pertinent rules of construction, the
contract is ambiguous.  Id.  But if after we apply the
relevant rules of construction, a contract can be given a definite legal
meaning, the contract is unambiguous, and we construe it as a matter of law.  Frost
Nat’l Bank v. L & F Distributors, Ltd., 165 S.W.3d 310, 312 (Tex.
2005).

            Appellants
argue that in determining whether the contract is ambiguous, the court must
first interpret the contract by applying “rules of interpretation.”  If the
application of the rules of interpretation yields two reasonable
interpretations, the contract is ambiguous.  According to this view, only if
the contract is ambiguous should the court proceed to construe the contract by
applying the canons of construction, presumably with the aid of parol
evidence.  See, e.g., Moon Royalty, LLC v. Boldrick Partners, 244
S.W.3d 391, 394 (Tex. App.–Eastland 2007, no pet.); Stewman Ranch, Inc.
v. Double M. Ranch, Ltd., 192 S.W.3d 808, 811 (Tex. App.–Eastland 2006,
pet. denied).  It is true that the Eastland court of appeals has employed this
two step process to first “interpret” and then “construe” a document.  However,
this has not been the method used by other Texas courts, including the supreme
court and this court, in determining whether a deed is ambiguous.  

            In
practice, the courts of Texas and other jurisdictions have used the terms “interpretation”
and “construction” interchangeably.  Consequently, both terms have been used to
refer to the rules or canons applied by courts to determine whether a written
instrument is ambiguous.  For example, Justice Calvert in Universal
C.I.T. Credit Corp. v. Daniel, 150 Tex. 513, 518, 243 S.W.2d 154, 157
(1951), stated that “a contract is ambiguous only when the application of
pertinent rules of interpretation to the face of the instrument leaves
it genuinely uncertain which one of two or more meanings is the proper
meaning.”  (Emphasis added.).  In citing Daniel, the Texarkana court
of appeals said “[a]n instrument is ambiguous only when the application of
pertinent rules of construction leaves it genuinely uncertain which of
two reasonable meanings is the proper one.”  Prairie Producing Co. v.
Schlacter, 786 S.W.2d 409, 413 (Tex. App.–Texarkana 1990, writ denied)
(emphasis added).  In Davis v. Andrews, 361 S.W.2d 419 (Tex. Civ.
App.–Dallas 1962, writ ref’d n.r.e.), the Dallas court of appeals clearly
regarded the terms as synonymous.

 

A contract is not ambiguous in the sense that parol
evidence is admissible to explain its meaning unless application of the
pertinent rules of interpretation  leave a real uncertainty as to which
of two or more possible meanings represent[s] the true intention of the
parties.  An application of the rules of construction, discussed above,
reveals no conflict of meaning, and therefore no ambiguity results.

 

Id.
at 425 (emphasis added). This court has also used “interpretation” and “construction”
interchangeably.  See EOG Resources v. Wall, 160 S.W. 3d
130, 136 (Tex. App.–Tyler 2005, no pet.).  In Columbia Gas, the supreme
court cited Daniel stating that “if the contract is subject to
two or more interpretations after applying the pertinent rules of construction,
the contract is ambiguous. . . .”  Columbia Gas, 940 S.W.2d at
589 (emphasis added); see also Frost Nat’l Bank, 165 S.W.3d at
312; J.M. Davidson v. Webster, 128 S.W.3d 223, 229 (Tex. 2003).

            The
law review article cited by Appellants contains a comprehensive compilation of
what the author terms “canons of construction” and an exhaustive review of
their application.  See generally Bruce M. Kramer, The
Sisyphean Task of Interpreting Mineral Deeds and Leases:  An Encyclopedia of
Canons of Construction, 24 Tex.
Tech. L. Rev. 1 (1993).  What Appellants call “rules of interpretation”
are among the cardinal rules the author describes as “canons of construction,”
which illustrates the role of semantic confusion in treatments of the subject. 
But it further demonstrates, and perhaps explains, the interchangeability, in
practice, of “interpretation” and “construction.”  The author notes that the
canons “should not be used as a substitute for common sense and an
understanding of the English language,” but only to assist in effecting the
intent of the parties.  Id. at 129.  The article is replete with
examples where subsidiary canons have been misapplied or applied
inconsistently.  Nevertheless, after an encyclopedic study, the author concludes
that the modern tendency is to use canons of construction, not only as
Appellants advocate, after a preliminary determination of ambiguity, but in
order to avoid a finding of ambiguity.  See id. at 2,
5.

            The
inclination of the courts to use the canons of construction has a practical
basis.  It avoids the difficulties inherent in the admission of extrinsic
evidence.  “Individual adjudication of deeds would lead to disparate results
depending on circumstances extraneous to the instrument.”  Id. at
19.  It would also complicate the job of title examiners who would be unable to
rely on the written word.  Id. 

Rules of
Construction

            The
first rule of construction is to ascertain and give effect to the parties’
intentions as expressed in the document.  Frost Nat’l Bank, 165
S.W.3d at 311-12.  “The intention is to be ascertained as expressed by the
language used, and not the intention which may have existed in the minds of
[the makers], but is not expressed by their language.”  Slavens v. James,
229 S.W. 317, 318 (Tex. Comm’n App. 1921, judgm’t adopted).  In construing a deed
to ascertain the parties’ intention, the whole instrument must be looked to and
all of its parts and all of its language given effect if possible.  Holloway’s
Unknown Heirs v. Whatley, 133 Tex. 608, 614, 131 S.W.2d 89, 92 (1939). 
“The parties to an instrument intend every clause to have some effect and in
some measure to evidence their agreement.  Even if different parts of the deed
appear contradictory or inconsistent, the court must strive to harmonize all of
the parts, construing the instrument to give effect to all its provisions.”  Luckel
v. White, 819 S.W.2d 459, 462 (Tex. 1991) (citations omitted).  “The
court should not strike down any part of the deed, unless there is an
irreconcilable conflict wherein one part of the instrument destroys in effect
another part thereof.”  Id.  No single provision should be given
controlling effect.  J. M. Davidson, Inc., 128 S.W.3d at 229. 
Labels given the clauses of “granting,” “warranty,” “habendum,” and “future
lease” are not controlling, and the substance of unambiguous provisions should
be given effect. Luckel, 819 S.W. at 463.  “The relative
positions of the different parts of the instrument are not necessarily
controlling; the modern and sounder [view] being to ignore the technical
distinctions between the various parts of the deed, and to seek the grantor’s
intention from them all without undue preference to any. . . .”  Reynolds
v. McMan Oil & Gas Co., 11 S.W.2d 778, 781 (Tex. Comm’n App. 1928,
holding approved).

            Two
subsidiary rules or canons of construction are relevant to the instant case. 
In Cullers v. Platt, 81 Tex. 258, 263, 16 S.W. 1003, 1005 (1891),
the court stated that “where there is a repugnance between a general and a
particular description in a deed, the latter will control . . . , although,
whenever it is possible, the real intent must be gathered from the whole description. . . .” 
And in Gibson v. Watson, 315 S.W.2d 48, 57 (Tex. Civ.
App.–Texarkana 1958, writ ref’d n.r.e.), the court stated that it was well
settled law that “a general description may be looked to in aid of a particular
description that is defective or doubtful, but will not control or override a
particular description about which there can be no doubt.”   

            A canon
of construction followed by the supreme court is also particularly applicable
here; in resolving conflicts, “typewritten matter in a contract must be given
effect over printed matter.”  McMahon v. Christmann, 157 Tex.
403, 407, 303 S.W.2d 341, 344 (1957).  In another case, the Fort Worth court of
appeals stated the “nonprinted over printed” canon of construction, as follows:

 

It is a well-recognized rule of construction that
where a part of a contract is written, or typewritten, and part is printed, and
the written and printed parts are apparently inconsistent, or there is
reasonable doubt as to the sense and the meaning of the whole, the words in
writing will control the construction of the contract.

 

 

Producers’
Oil Co. v. Snyder, 190 S.W. 514, 515-16 (Tex. Civ. App.–Fort Worth
1916, no writ).

            Quest
cites two other subsidiary rules of construction.  One is that a deed will be
construed to confer upon the grantee the greatest estate its terms will
permit.  Waters v. Ellis, 158 Tex. 342, 347, 312 S.W.2d 231, 234
(1958); Easton v. Dial, 288 S.W.3d 491, 500 (Tex. App.–San
Antonio 2009, pet. denied).  The other is that “grants are liberally, exceptions
strictly, construed against the grantor.”  Davis, 361 S.W.2d at
423.

Application

            None
of the parties contend the royalty contract in question is ambiguous.  We also
conclude that it is unambiguous.  Accordingly, we will construe the royalty
contract, applying the rules of construction to the extent necessary.  

            Appellants’
view is that since only Rusk County is named in the space in the printed
instrument, only the royalty in the four Rusk County tracts listed in Exhibit
“A” was conveyed to Quest.  Although Exhibit “A” is specifically made a part of
the granting clause, Appellants contend that the eight Gregg County tracts
listed in the exhibit were not conveyed, because their description in Exhibit
“A” was merely surplusage and should be ignored.

            Appellants’
interpretation requires that the blank in the granting clause of the printed
form that contains the word “Rusk” be viewed in isolation and given controlling
effect over the specific legal descriptions shown in Exhibit “A,” also a part
of the granting clause.  This violates one of the cardinal rules of
construction–that we consider the entire writing and attempt to harmonize and
give effect to all its provisions.  Frost Nat’l Bank, 165 S.W.3d
at 312.  A court is to presume that the parties intend every clause to have some
effect.  See Steeger v. Beard Drilling, Inc., 371 S.W.2d
684, 688 (Tex. 1963); see also Heritage Res., Inc., 939 S.W.2d at
121.  The omission of “Gregg County” from the blank provided in the form does
not limit the conveyance of the royalty in and under the Gregg County tracts
specifically described in Exhibit “A” and made a part of the granting clause.  In
considering the entire royalty contract in an effort to harmonize and give
effect to all its provisions, we conclude that the royalty contract conveys the
royalty in all of the tracts specifically described in Exhibit “A.”  

            Appellants
describe Exhibit “A” as “boilerplate,” rather than the printed form, although
Exhibit “A” is typewritten and contains a particular description.  In their reliance
on the printed form, it is Appellants who are relying on “boilerplate.”  As has
been noted, common sense and practical experience teach that the parties may
not always read or understand what is contained in the printed form.  Kramer, supra,
at 96. They are much more likely to have read and discussed the
typewritten description added, in this instance, to the granting clause as Exhibit
“A.”  See id.  Therefore, the description in Exhibit “A” best
evidences the intent of the parties.

            Although
not necessary to the result, our determination is consistent with the
subsidiary canons cited by Quest.  It confers on the grantee the greatest
estate the terms of the royalty contract will permit.  See Waters,
312 S.W.2d at 234.  It also construes the grant liberally and construes the exceptions
against the grantor.  See Davis, 361 S.W.2d at 423.

            The
trial court did not err in concluding that the royalty contract conveyed the
royalties in both Rusk and Gregg Counties.  Appellants’ first and second issues
are overruled.

 

Statute of Limitations and Laches

            In their
third issue, Appellants contend that “the trial court erred in failing to find
that the statute of limitations and laches barred recovery of payments made to
Appellees under the royalty contract prior to January 21, 2006.”

            Quest
in its counterclaim made no claim for recovery of any royalty paid to
Appellants prior to January 21, 2006, and the judgment made no such award to
Quest.  As Appellants state, Quest readily acknowledged that the two year
statute of limitations would bar recovery of royalties improperly paid to
Appellants prior to January 21, 2006 (two years before Quest’s counterclaim was
filed).  Quest agreed to limit its recovery of past royalties to only those
royalties held in suspense, and these were the only funds the trial court
ordered paid to Quest.

            Appellants’
third issue is without merit and is overruled.

 

Disposition

            The
judgment of the trial court is affirmed.

Bill
Bass

     Justice

 

Opinion delivered July 13, 2011.

Panel
consisted of Griffith, J., Hoyle, J., and Bass, Retired J., Twelfth Court of
Appeals, sitting by assignment.

 

 

 

(PUBLISH)









                [1] 
The appellants are Lamar Elder, Jr., Ferria Jean Elder, Nathan Jones, Barbara
F. Cox, Lacetta R. Elder, Pamela Elder, and Rodney Elder.  The appellees are
Anadarko E&P Company, L.P., Quest Energies, LLC, and Quest Energies Group,
Ltd., successor in interest to Quest Energies, LLC.  Anadarko did not file a
brief.